# UNITED STATES DISTRICT COURT

for the

## NORTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| George H. Finn | ) |
| | ) |
| Pro Se | ) |
| | ) |
| ——————————————————— | ) |
| **Plaintiff(s),** | ) |
| | ) |
| Vs. | ) |
| | ) |
| State of New York | ) |
| Hinman Howard & Kattell, LLC | ) |
| Katherine A. Fitzgerald, Esq. | ) |
| Harvey Shapiro, Esq. | ) |
| Nelson F. Migdal, Esq. | ) |
| Ronald Schiess, LLS | ) |
| Bruce W. Snyder., Director of LS | ) |
| Delta Engineers, Architects, & Land Surveyors, PC | ) |
| Jenee Rasmussen-Green, LLS | ) |
| Ronald Green, LLS | ) |
| Rasmussen Land Survey PLLC | ) |
| | ) |
| ——————————————————— | ) |
| **Defendant(s)** | |

U.S. DISTRICT COURT - N.D. OF N.Y.

**FILED**

AUG 1 9 2022

AT_____ O'CLOCK_____
John M. Domurad, Clerk - Binghamton

Amended

Civil Action No. 3:22-CV-721 (DNH/ML)

CIVIL COMPLAINT PURSUANT TO
V & XIV AMMENDMENTS OF THE
UNITED STATES CONSTITUTION:
DUE PROCESS
USC 28 §1331
USC 42 §1985 (3)

———————————————————————————————
( Plaintiff(s) demand(s) a trial by ___X___ JURY _____ COURT )
(

## JURISDICTION

1.  This is a civil action brought pursuant to United States Constitution Amendment V, (as incorporated to the States through Amendment XIV): Due Process ... shall not be deprived of life, liberty, or **_property_**, without **_Due Process of Law,_** 28 USC §1331 Federal Question, 42 USC §1985 (3) Conspiracy to interfere with civil rights.

1

**PARTIES**

2.  a.  Plaintiff:                George H. Finn

        Address:                227 Springsteen Road

                            Windsor, New York 13865-1507

        Telephone:             (207) 242-2114

.

.  b.  Defendant              State of New York   : NYS

        Official Position:       Defendant

        Address:                Empire State Plaza

                            Justice Building, 2nd Floor

                            Albany, NY 12224

        Jurisdiction            United States Constitution Amendment V & XIV

    c.  Defendant              Hinman Howard & Kattell LLC      : HH&K

        Official Position:       Defendant

        Address:                80 Exchange St.

                            Binghamton, NY 13901

        Jurisdiction            United States Constitution Amendment V & XIV

                            USC Title 28 Part IV Chapter 85 §1331

    d.  Defendant              Katherine A. Fitzgerald, Esq        : KAF

        Official Position:       Defendant

        Address:                80 Exchange St.

                            Binghamton, NY 13901

        Jurisdiction            United States Constitution Amendment V & XIV

                            USC Title 28 Part IV Chapter 85 §1331

    e.  Defendant              Harvey Shapiro, Esq         : HS

        Official Position:       Defendant

        Address:                101 Tamarack Lane

                            Trumansburg, NY 14886-9767

        Jurisdiction            United States Constitution Amendment V & XIV

                            USC Title 28 Part IV Chapter 85 §1331

f.  Defendant               Nelson Migdal, Esq_____ : NM_____

    Official Position:       Defendant_____

    Address:                2101 L Street, NW, Suite 1000_____

                            Washington, D.C. 20037_____

    Jurisdiction            United States Constitution Amendment V & XIV

                            USC Title 28 Part IV Chapter 85 §1331_____


g.  Defendant               Ronald Schiess - Southern Tier Surveyors, LLS____ :RS

    Official Position:       Defendant_____

    Address:                71 Terrill Rd,_____

                            Harpursville, NY 13787-1539_____

    Jurisdiction            United States Constitution Amendment V & XIV

                            USC Title 28 Part IV Chapter 85 §1331_____

                            USC Title 42 §1985(3)_____


h.  Defendant               Bruce Snyder,  Director of LS_____ : BS___

    Official Position        Defendant

    Address:                4873 NYS Rt 5_____

                            Vernon, NY 13476_____

    Jurisdiction            United States Constitution Amendment V & XIV

                            USC Title 28 Part IV Chapter 85 §1331_____

                            USC Title 42 §1985(3)_____


i.  Defendant               Delta Engineers. Architects & Surveyors, PC : Delta

    Official Position:       Defendant_____

    Address:                4873 NYS Rt 5_____

                            Vernon, NY 13476_____

    Jurisdiction            United States Constitution Amendment V & XIV

                            USC Title 28 Part IV Chapter 85 §1331_____

                            USC Title 42 §1985(3)_____

3

j.   Defendant          <u>Jenee' Rasmussen-Green LLS, : JRG</u>

     Official Position:  <u>Defendant</u>

     Address:           <u>8 Highland St.</u>

                        <u>Oneonta NY 13820</u>

     Jurisdiction       <u>United States Constitution Amendment V & XIV</u>

                        <u>USC Title 28 Part IV Chapter 85 §1331</u>

                        <u>USC Title 42 §1985(3)</u>


k.   Defendant          <u>Ronald Green,        : RG</u>

     Official Position:  <u>Defendant</u>

     Address:           <u>8 Highland St.</u>

                        <u>Oneonta NY 13820</u>

     Jurisdiction       <u>United States Constitution Amendment V & XIV</u>

                        <u>USC Title 28 Part IV Chapter 85 §1331</u>

                        <u>USC Title 42 §1985(3)</u>


l.   Defendant          <u>Rasmussen Land Survey PLLC      : RLS</u>

     Official Position:  <u>Defendant</u>

     Address:           <u>8 Highland St.</u>

                        <u>Oneonta NY 13820</u>

     Jurisdiction       <u>United States Constitution Amendment V & XIV</u>

                        <u>USC Title 42 §1985(3)</u>

4

**PRELIMINARY FACTS**

3.      In 1940 the 6th Judicial District of the New York Supreme Court ruled against a family that was using a grammatical descriptive in an attempt to illegally claim the same land that is the attempt to defraud in this civil suit.

4.      The same logic is applied to the attempt in current time; but is not being used in a court of law, but rather in a hidden conspiracy due to its lack of substance.

5.       The logic to justify their illegal action is a twist of professional land surveying rules, that are applied when needed; but ignored when the rule does not support their conspiracy.

6.      The land that the rule is being applied to is comprised of three (3) parcels of land. Parcel one (1) was surveyed and described as 21 plus acres of land and well defined. The second parcel, parcel two (2) was *not* surveyed and described as 27 acres of land; but was well defined by its *bounding or surrounding parcel's*. The third parcel, parcel three (3) was conveyed as 60 acres of land, it too had well defined boundaries and supporting historical fact's..

7.      Now the application. The 60 acre parcel, parcel three (3) is being highlighted as not being sixty (60) acres due to its *bounding*. This is 100% correct. It has historical facts that support this, including both  an historical survey and a current survey in the mid 1950's that showed it to contain only fifty-four (54+) acres of land..

8.      We have now ascertained parcel (3) of not being comprised of sixty (60) acres. Let us now twist our rule and examine parcel two (2), the twenty-seven (27) acre parcel. The twisted logic that the conspiracy tried in history and again wants everyone to ignore is the *bounding* for parcel (2) and argue that since it is only twenty-seven (27) acres of land and bounded on the south by the lot ninety (90) southern lot line, it cannot reach our surveyed parcel to the north even though it is described as being *bounded* by our surveyed parcel.

9.      So ignoring bounding it cannot reach our surveyed parcel to the north, we will expand our surveyed parcel south to meet it and claim the six (6) acres. The bounding of parcel (3) the 60 acre parcel helps the conspiracy by reducing it to 54 acres; but does not help the conspiracy by expanding the 27 acre parcel to the thirty-three (33) actual acres that it is comprised of. So the bounding is ignored.

10.     The decision to correct this by the court in 1940 did a poor job in correcting the description and updating the deed of the landowners, the Springsteen's. They did update the description to thirty-three (33) acres of land; but the bounding description also included the 21 acre parcel so in reality there were fifty-four (54) acres of land.

11.     Even with the poor attempt to correct the problem the ***bounding*** was intact to describe the entire plot of land. This is supported by historical deed's that described all three parcels as 108 acres of land, 54 acres plus 33 acres plus 21 acres for a total of one hundred and eight (108) acres of land.

12.     To this day, it is the bounding that the fraud conspiracy wants to disguise.

13.     Connected to the 1940 decision of the court, is that the family that lost in the 1940 hearing has descendants that are professional land surveyors in Broome County New York.

14.     If the State of New York had helped in any way these descendants would be in the list of defendants. To prove their involvement, testimony would have been needed by some of their employee's. But, the New York State Police declared, they do not have the resources.

15.     The same land theft attempt conspiracy is being attempted currently using ***lawyers and professional land surveyors*** to falsify legal documents and trampling all over New York State and Federal Law's.

16.     The current attempt to reverse the 1940 court decision with a theft by fraud has been ignored by all official levels of the State of New York.

17.     **Question's for the court.**

   **a.)** It has taken decades of digging delayed by having sought help from those who had committed the fraud. Is each attempt by Hinman Howard & Kattell LLC to evade discovery a separate crime or just a continuation of the initial attempt to defraud?

   **b.)** Do the different parts of the US Constitution carry different weights of precedence? This is a needed evaluation since the conspiracy did not start to surface until after the ***time clause*** of the Statute of Limitation's was in effect, which gives the appearance that this was part of the conspiracy since we are dealing with criminal acts that were perpetrated by those well versed in law.

   **c.)** If this is part of the conspiracy is it also evasion to escape justice?

**d.)** Returning to the weight of the parts of the US Constitution, we have those that commit felonies hiding behind the Statute of Limitations and where the victim of the felonies has been denied Due Process. This weight of the different parts of the US Constitution needs to be evaluated. It also needs consideration if the Statute of Limitations was a planned part of the criminal act. Will this then change or remove it all together?

**e.)** Are felonies protected by the Statute of Limitations when they are continuously hidden and does the camouflaging of them add a new felony of its own?

**f.)** Is the Statute of Limitations applied to non complete actions?
ie Katherine A. Fitzgerald. Esq and Hinman Howard & Kattell LLC were contracted to perform a tenant deed separation and ordered by the New York Supreme Court 6th JD to transfer the existing land to the plaintiff. It has not been completed in entirety. The original parcel of land comprised of 55 acres was not fully transferred, only 49 acres was transferred in opposition to the court order.

**g.)** If only 49 of the 55 acres of land were transferred, who then becomes the owner of the remaining 6 acres of land? The plaintiff would like to propose that the ownership remained with both the original tenant's, George H. Finn and Charles Thomas Thrasher and now that Charles Thomas Thrasher has passed away, the ownership would remain with the surviving tenant, George H. Finn.

**h.)** In my research I recall reading that the Statute of Limitations can be superseded by court justices in the interest of justice, is this correct?

**i.)** If each action by the firm Hinman Howard & Kattell LLC was to divert from discovery, is this a part or segment of the initial fraud? Would this suggest that the cause of action is still in play and not complete?

**j.)** When the plaintiff, sought help from Hinman Howard & Kattell LLC and they diverted discovery does this fall under Obstruction of Justice?

**k.)** Federal law denies statute of limitations when the fugitive is at large trying to escape justice. Is the constant denial and not disclosing their actions of altering the plaintiffs land description by the defendants and the falsification of legal documents nothing less than evasion to escape justice?

l.) Under New York law, the time within which an action based upon fraud must be commenced is *'the **greater** of six years from the date the cause of action accrued **or** two years from the time the plaintiff discovered the fraud, or could with reasonable diligence have discovered it.'* If the discovery was made on June 1, 2021, would this keep the Cause of Action from dormancy?

m.) Does *"**reasonable diligence**",* expect people to doubt, examine and fine comb their attorneys work or question official document's that are sworn to by court and state officials?

n.) Is New York State and its supporting agents a part of the *cause of action* since the New York Supreme Court was used in the cause of action?

o.) The plaintiff was residing in the state of Maryland and HH&K provided their legal service's with all correspondence via The United States Postal Service. Since the US Postal service was utilized to transact the fraud, does this also place this complaint into Federal Jurisdiction?

p.) Is a New York criminal conspiracy highlighted by the clerk of the court blanketing evidence submitted to the New York Supreme Court 6th Judicial District in an attempt for a trial? This was done by blacking submitted supporting evidence. The evidence showed that the taxable property from the original deed to the reduction in property of the commissioner's deed decreased. The clerk scanned a page of black into record. Copy of 1 page of 3 submitted tax documents Page #38. Download from clerks file entry showing nothing but black. Page #39

q.) Do the facts support fraud? "Fraud is generally defined in the law as an intentional misrepresentation of material existing fact made by one person to another with knowledge of its falsity and for the purpose of inducing the other person to act, and upon which the other person relies with resulting injury or damage. *Fraud may also be made by an omission or purposeful failure to state material facts, which nondisclosure makes other statements misleading*".

r.) Due to the complexity of federal law interpretation, the plaintiff would like to rely on the court to ascertain if and what laws were broken. The plaintiff will rely on the court for verification of a cause of action by each defendant although the plaintiff has an extensive list of suspected wrongs.

s.) The plaintiff also grows weary of discovery, laws changing and updating during the preparation of this amended complaint; but like the false survey the laws wording has hole's and room for, I believe the legal word is MOOT. I am aging, tired of just attempting to just get a correction deed; but haven't lost a skill that carried me through life, analytic's.

8

## FACTS

18.     In the summer of 1974, Joseph E. Finn argued with Edward L. Darling, LLS who was performing a land survey for Andrew I. Hurlburt and Doris Hurlburt, and attempting to move property iron's to obtain the land that the court in 1940 declared they did not own. He failed in the attempt due to an existing survey of Joseph E. Finns' property that was the east half of the lot and showed the existing survey irons for the Hurlburt land. Joseph E. Finn had more than just the survey, he was a retired Naval Chief, who had survived Pearl Harbor, guided ships around the world with his navigational skill's and sextant, earned a degree in mathematics after the war, programmed computers for the United States and turned down a congressional appointment to remain in retirement.

19.     Seven years later in 1981 approximately two (2) months after Joseph E. Finn died at Andrews Air Force Base Hospital; Edward L. Darling, according to his updated survey of the Hurlburt land, *checked* his survey and updated it with a date of 1981, changed from 1974.  Property irons were moved to reflect the reversal of the Supreme Court decision in 1940.  Another MOOT topic.

20.     Joseph E. Finns' recorded survey is no longer in the Broome County Records Department or this is what the plaintiff is told. The plaintiff was not allowed access.

21.     The Town of Colesville New York declared that "those are public record's" when the plaintiff told them he was not allowed access; but it was not in their jurisdiction to help in the matter.

22.     In the period of time from 1982 through 1984, Katherine A. Fitzgerald Esq at Hinman Howard & Kattell, LLC performed a tenant deed separation between a now deceased former brother-in-law, Charles T. Thrasher and the plaintiff, George H. Finn.

23.     On May 30. 1984 Katherine Fitzgerald wrote a letter to Nelson Migdal where she states in the letter that she was enclosing (1) a proposed commissioners deed, (2) a report of commissioner's that will be filed with the Broome County Clerk and (3) an oath for the commissioners to take and sign that will also be filed with the Broome County Clerk. Page's #22 & #23

24.     The three court appointed commissioner's, Nelson F. Migdal Esq, Harvey Shapiro Esq and Vincent Vitrano Esq, on **April 24, 1984** submitted the commissioner's deed to the 6th Judicial District of the New York Supreme Court in an interlocutory judgment and swore the prepared oath to the 6th Judicial District of the New York Supreme Court that the commissioners deed represented the property that was to

be conveyed by the judgment of the court. This was when the fraud conspiracy was initiated and put into material action.        Commissioners Deed Page's #26, 27 & 28

25.     This raises the question if the commissioner's were acting independently or being guided?  Their report was prepared for them and not of their doing. The oath they took in front of the court and the commissioners' deed were all prepared for them for submission to the court.

26.     On **February 16, 1988**, Richard A. Hogan, clerk of Broome County, County Court and the Supreme Court of the 6th Judicial District of the State of New York placed his seal verifying that the annexed copy of the commissioners deed filed **June 8, 1984** was an exact true copy of the original commissioners deed filed **June 8, 1984**.

27.     Richard A. Hogans' confirmation took *three years and ten month's to verify* after the court hearing, where the three commissioners verified that the Commissioners Deed was in fact equal to or represented the same land as the Original Warrantee Deed. Why did the confirmation take years to confirm?  This raises doubt on the magnitude of involvement in this conspiracy.

28.     To my knowledge at least two of the three commissioners' have worked for the firm of Hinman Howard & Kattell, LLC.

29.     The commissioner's confirmation states "Being the same premises conveyed by Thomas B. and Harriet L. Finn to George H. Finn and Charles Thomas Thrasher, as joint tenants, by warranty deed dated January 14, 1975 and recorded in Broome County Clerk's Office on November 12, 1975, in Book 232 of Deeds at page 88."  Commissioner's Confirmation Enlarged Page #29

30.     Why was the commissioners' deed altered and changed from the original warranty deed?
Original Warrantee Deed       Page #24, 25
Commissioners Deed       Page #26, 27, 28

31.  The commissioners' deed was changed from the original warranty deed to obscure all the legal *boundary* descriptions by the insertion of a non existent land survey that in effect reverses the courts decision in 1940 and attempts to transfer the six (6) acres back to the losing property owners in the 1940 decision. The inserted survey contradicts the bounding descriptions such that the survey bounds are not on the described deeded boundaries.  Another MOOT topic;

32.     Examining the commissioner's deed in comparison to the previous deed that was claimed by the three court appointed attorneys to represent the same parcel of land and looking closely at the

commissioner's deed, it is almost identical to the previous deed, except for right in the middle of the description it was parted, sliced open, or separated and a false fictitious survey placed right into the middle of the deed. I say fictitious and false and can state adamantly without a doubt because it is not in the warranty deed, as stated in the Commissioners Deed, prepared by the defendant law firm of HH&K just 3 months prior to the submission of the Commissioner's Deed. It was a part of the warranty deed; but altered and falsified into the Commissioners Deed.

33.     The false survey states 'an early survey' but is not in any of the Warrantee Deed's for the property in the prior 120 years before the commissioners' deed, maybe more.

34.     A Motion to Dismiss highlighted or brought back into view a very pertinent fact, the original boundaries are still intact; but are not in focus due to the fictitious survey that over rides everyone's vision like a spotlight, '*an early survey'!* It has been the continued overriding force in determining where the land surveyors have wanted to place their monuments, even when it went against the rules of surveying. Why would anyone ignore facts unless there is an over riding influence, like a conspiracy to undo a deemed wrong by the court on one of their groups ancestors.

35.     An outstanding feature of this 'early survey' is the overwhelming amount of exposing itself as false. Any real professional, I would hope, would know it to be false for many reasons. The first is that there is NO STARTING POINT. It describes an East line with a length value. It then runs in a westerly direction (from what end of the east line? And at what degree, westerly has 178 whole degree values that fill this definition.) Thence running in a northerly direction a specified direction that the original deed history had an estimated value along a specified lot boundary; but the survey has a fixed value, no specified boundary or on what heading in the 178 possible northerly direction's that the line could go in. Most professional surveyors would want to know where they should start at. The rest of this 'early survey' continues with less than an adolescent survey description, adding distances where there originally were none; but most of all illustrating the unskilled in its wording. Unless the professional had an ulterior motive, this would have stood out as worse than fictitious. But more importantly they would have had to perform *deed research* as stated in any proposed contract to perform a land survey.

36.     Closer scrutiny of the two deeds:
The description that was placed into the plaintiffs deed by HH&K and labeled as an *early survey* comes from Book of Deed's 502 at Page 480 and 481; While reading this and comparing the wording that was placed into the deed, the wording was altered.
Book of Deeds 502 at Page 480 and 481:

ALL THAT TRACT OR PARCEL OF LAND situate in the Town of Colesville, County of Broome and State of New York, being in the southwest portion of Lot Fifty-nine (59) in Hammond's Patent, particularly described as follows: *Beginning* at the southwest corner of said Lot No. 59 in the line between Colesville and Windsor and running thence north along the line between Lots 58 and 59 an *estimated* distance twenty chains and fifty links ( 20 c. 50 l.) to the northwest corner of this parcel  conveyed by Martin Doolittle to Phillip Stilwell by deed dated October 18, 1851 and found in Book of Deeds No. 37 at page 269; thence *easterly* along said parcel an *estimated* distance of ten chains and thirty-seven links (10 c. 37 l.) to the west line of lands conveyed by John M. Knowlton to said Phillip Stillwell by deed dated December 1, 1847 and found in Book of Deeds No. 31 at page 338; thence north along that parcel to it's northwest corner; thence *easterly* to its northeast corner understood to be the middle line dividing said lot into east and west halves, and ***thence south on said line*** and along lands of Federal Land Bank (see Book of Deeds No. 436 at page 367) an *estimated* distance of twenty-six and one-half chains (26 c. 50 l.) to said town line, and then west thereon and along lands of said Springsteens in Lot No. 74 and of lands of first parties in said lot an *estimated* distance of twenty-one chains (21 c.) to the place of beginning, and being that part of the farm of James A. and Inez E. Berry which lies north of said town line and this deed is given to confirm the conveyance by said Berrys to said Springsteens dated November 1, 1927 and recorded in Broome County Book of Deeds No. 376 at page 153 as conveying all the said land north of said town line and reference is hereby made to said last mentioned deed to the end and purpose of such confirmation.

There are a few things the plaintiff would like to point out about this description:

Nowhere in it is the word ***survey*** stated.

    A. Surveyors do not ***estimate*** distance; they measure and calculate using geometry.

    B. Surveyor's also reference records to identify ***boundary's*** to identify where a border is, something referenced in this description as '*along this parcel*'; which in itself would need research to discover that it is bounded on the north by land's now or formerly owned by Simon P. Quick containing sixteen and twenty-eight one hundredths acres of land ( 16 & 28/100 ) that itself is bounded by the north line of lot No. 59, not 60 feet south of the line as the stakes have been moved to give the appearance of 16 & 28/100 acres of land after moving the property south onto the desired theft of land.

Comparing this real description to the false altered description placed into the plaintiffs' families' deed:

An early *survey* shows the property to be approximately 26 chains, 50 links on the east side, thence running in a *westerly* direction 21 chains to a point, thence running in a *northerly* direction 20 chains, 50 links to a point; thence running in an *easterly* direction 10 chains, 34 links to a point, thence running *northerly* 6 chains to a point, thence running in an *easterly* direction 10 chains, 67 links to a point, said point being the north end of the *easterly* side, the first described course above.

Items that come to focus:

A.  The word *survey* having been inserted.

B.  The east boundary line being on the east/west dividing line of the lot has been removed.

C.  The west line is no longer on the lot line between lot 58 and lot 59.

D.  Distances have been inserted for two of the legs in the description. One being *6 chains*, replacing '*thence north along that parcel to it's northwest corner*' and the other insertion is '*10 chains, 34 links to a point*', replacing '*thence easterly to its northeast corner understood to be the middle line dividing said lot into east and west halves*'.

E.  A survey using *approximately*, not having a *starting point* or using precise headings or known landmarks, such as the lot boundary line or the lot east / west dividing line?

F.  Without any sort of starting point, this could be anywhere in the world.

37.    Excerpt from HH&K Abstract of Title

| | | |
|---|---|---|
| **HH&K**<br>**NO. 4** | **CLYDE S. VANCE and ARMITTA MAE**<br>**MEDLAR and JAMES H. LIDDLE and**<br>**EVELYN LIDDLE, husband and wife**<br><br>**TO**<br><br>**CLOYDE A. SPRINGSTEEN and**<br>**INA M. SPRINGSTEEN** | **QUIT CLAIM DEED**<br><br>Dated:  September 9, 1940<br>Ack. :  September 9, 1940<br>Rec'd:  September 9, 1940<br>Book:   502 of Deeds at<br>Page:   480 |

CONVEYS:

ALL THAT TRACT OR PARCEL OF LAND situate in the Town of
Colesville, County of Broome and State of New York, being in the south-
west portion of Lot Fifty-nine (59) in Hammond's Patent, particularly
described as follows:  Beginning at the southwest corner of said Lot No.
59 in the line between Colesville and Windsor and running thence north
along the line between Lots 58 and 59 an estimated distance of twenty
chains and fifty links (20 c. 50 l.) to the northwest corner of this
parcel conveyed by Martin Doolittle to Philip Stilwell by deed dated Octo-
ber 18, 1851 and found in Book of Deeds No. 37 at page 269; thence
easterly along said parcel an estimated distance of ten chains and thirty-
seven links (10 c. 37 l.) to the west line of lands conveyed by John M.
Knowlton to said Philip Stilwell by deed dated December 1, 1847 and found
in Book of Deeds No. 31 at page 338; thence north along that parcel to its
northwest corner; thence easterly to its northeast corner understood to be
the middle line dividing said lot into east and west halves, and thence
south on said line and along lands of Federal Land Bank (see Book of
Deeds No. 436 at page 367) an estimated distance of twenty-six and
one-half chains (26 c. 50 l.) to said town line, and thence west thereon
and along lands of said Springsteens in Lot No. 74 and of lands of first
parties in said lot an estimated distance of twenty-one chains (21 c.) to
the place of beginning, and being that part of the farm of James A. and
Inez E. Berry which lies north of said town line and this deed is given
to confirm the conveyance by said Berrys to said Springsteens dated
November 1, 1927 and recorded in Broome County Book of Deeds No. 376
at page 153 as conveying all the said land north of said town line and
reference is hereby made to said last mentioned deed to the end and
purpose of such confirmation.

38.    As noted in paragraph 31 of this complaint (3:22-CV-721 DNH/ML), the plaintiff states   The
commissioners' deed was changed from the original warranty deed to obscure all the legal ***boundary***
descriptions by the insertion of a non existent land survey that in effect reverses the courts decision in
1940 and attempts to transfer the 6 acres back to the losing property owners in the 1940 decision. The
inserted false survey contradicts the bounding descriptions so that the survey bounds do not coincide with
the described deeded boundaries.

39.    After the insertion of the false survey there are two sets of boundaries that exist. The first set of
boundaries belongs to the boundary descriptions in the deed. The second set of boundaries belongs to the
inserted false survey description.

40.    The verification of this lies in the comparison of the two surveys that Ronald Schiess, LLS performed on the property. The first set of boundary's belonging to the false survey description used for Ronald Schiess' first survey. Page 32 (3:22-CV-721)

41.    The second set of boundaries belong to Ronald Schiess using surrounding land surveys on the west and north sides. He refused to correct the boundary on the east/west dividing line due to the plaintiff not possessing a copy of that survey, even though a marker existed and could be verified by the surrounding deed's and an existing survey that showed the lots' east boundary. An honest surveyor could have done the verification in less than half a day; but this was not the case in this complaint. Page 31 (3:22-CV-721)

42.    The two surveys highlight the different boundaries, one belonging to the *false survey description* and the second set belonging to the *deeded bounding by the surrounding properties*. The two sets are not the same and in essence point's out that the commissioners' deed does not represent the same property as the previous deed.

43.    This is a proposed perjury that was committed by New York State Official's, having been appointed by the New York State Supreme Court.

44.    The plaintiff feels it is up to the Federal Court and the State of New York to ascertain why the commissioners lied or who put them up to it and who or how many are involved,

45.    So far there are three land survey companies that have done their utmost effort to support and keep the alteration from discovery. The plaintiff knows of two other land survey firms directly involved that can be unveiled with the help of law enforcement. This is a decision for the Federal Court and the State of New York.

46.    If there is no conspiracy why was the false information ignored by the land survey firm defendant's or brought to light? They each committed the same overt act to transfer the false information again and again onto the plaintiffs' land that continued to have a physical and mentally disabling effect on the plaintiff and his family. All of the survey firm's ignored the evidence surfaced by their professional skills and it supports their direct involvement in this conspiracy.

47.    The land survey defendant's overtly ignored many supporting document's they were supplied with by the plaintiff that revealed the fraud and conspiracy.

48.     Let it also be noted that the losing party's land in the New York Supreme Court decision in 1940 was transferred to them via a property survey; but seeing a chance to use grammar to help them steal land, they attempted it and lost. Non conspirators would have noted that in their research and could have established the true boundaries with little difficulties. Hopefully I will address all of this in a court of law.

49.     The false survey also attempts to alter the land so that the deeded access no longer gives legal access to the property the way Joseph E. Finn, deceased father of the plaintiff had laid it out.

Map Before Page #42          Tax Map After   Page #43

50.     The commissioners' deed has no supporting documents in the Abstract of Title prepared by HH&K dated January 1, 1984. Despite there being approximately only 3 and a half months between the Abstract of Title and the commissioners' deed submittal to the court, wordings such as 'early survey' and non existent distances have appeared in the wording of the deed. This supports the claim of fraud and the attempt to illegally reverse the New York Supreme Courts decision in 1940.

51.     The three lawyers, appointed by the court, claimed without any supportive professional work that the rewording represented the same exact parcel of land.  Was the court involved?

52.     The crime was dormant from its inception until over a decade later when the plaintiff, started having boundary issues and timber theft.

53.     At that time due diligence was curtailed by those that had performed the fraud by leading the plaintiff away from discovery with known bad advice. HH&K would continuously guide the plaintiff to get a land survey, knowing that the deed was altered and a false survey description inserted.

54.      In late 1997, taking the advice of HH&K, the plaintiff hired Southern Tier Surveyors, LLS to perform a land survey after loggers logged timber from my property.

55.     Upon completion Ron Schiess, LLS and I discussed what I felt were discrepancies. I supplied Ron Schiess LLS with surrounding surveys to help correct his survey that was based upon the false survey description that was transcribed into the commissioner's property deed and unknown to me at that time.

56.     Upon using the surrounding surveys Ron Schiess, LLS placed and corrected at least three (3) of the property iron's; but it is my belief that Ron Schiess, LLS was unaware of what happened after he left that day.

57.     Upon returning to check the iron's the plaintiff found that they had been moved by his business partner Roger Holmes, LLS from where Ron Schiess, LLS wanted them placed to the location in the original survey, Page #32. The existing property irons were ignored and the iron's moved to support the false survey description in the property deed. Supporting Surrounding Irons Found Survey: Page #31, False Description Survey: Page #32.          Southern Tier Surveyors LLS Worksheet Page #64

58.     I went to the Southern Tier Surveyors LLS Binghamton office to speak with Ron Schiess LLS but was unable to as he was not at the office. Roger Holmes LLS told me Ron Schiess LLS had sold out and he was the sole owner.

59.     Roger Holmes LLS wanted to know what I wanted to speak to Ron Schiess LLS about and I told him I wanted to know why the survey iron's had been moved. I left when he started to get violent and loud with "Are you accusing me of moving the survey irons?"

60.     During this same period, in 1999 another timber logger knocked on my kitchen door and asked if I wanted to sell my timber. I refused.  Upon entering that area of my property the next day, the trees were gone.

61.     I then went to the tax map office to view maps; but was denied access.

62.     While there a tax map employee, Dane Clark, asked to copy the survey by Southern Tier Surveyors, LLS in my possession. I told him "No, I do not want to record it, I am contesting it." He then asked if he could show it to someone and I let him. It is my feeling he copied it as the tax assessment area declined at the next taxation in 2000.  Page #33

63.     This began over 20 years of trying to determine why I was being subjected to timber theft and survey iron's being moved or disappearing all together. Above all, why licensed professional land surveyors were ignoring the rules of their profession.

64.     I again sought help from HH&K into why; but over the next 20 years I was told repeatedly to "get a land survey". This I tried 3 separate times; but HH&K never revealed that they had altered my deed by inserting boundaries by placing a false survey description into the commissioner's deed they prepared in 1984.

65.     During this same period of time, I was unable to continue searching for answers to my property disputes as I underwent a liver transplant that had me in continuous medical emergencies.

66.     I underwent two subsequent surgeries related to my transplant. The last operation was at the Veterans Hospital in Portland Oregon in 2019. This interfered with my being able to meet or continue my attempts to understand my property issues or focus on them except now and then.

67.     This raised *a doubt, a question, a wonder* if denying me Due Process due to my medical condition, was also against the Constitutions' 14th Amendment's equal protection clause?

68.     The lawyers at HH&K did nothing more than divert me from the truth to protect the fraud committed by their firm and add to the cover up.

69.     With the continued insistence from HH&K that I get a needed land survey I hired Delta Engineers, Architects, & Land Surveyors, PC on May 14, 2013 to do a land survey that included all deed/mapping research. Page #67 Item 2.2 If the research was performed, why was the falsified deed not discovered or brought to light?

70.     During my interaction with Delta, Bruce Snyder, Director of LS, had made statement's that were in contradiction to each other.  The first was that he could not move the property line to an existing stake without the land being legally transferred.  He then offered to move the line to the stake if I were to give the neighbor a right-of-way.

71.     I released Delta when I realized that they were repeating Southern Tier Surveyors, LLS work after Bruce Snyder, Director of LS, had told me in the beginning that "Southern Tier's scale is off by 12 feet; but not enough land to worry about." I also supplied Delta Engineers, Architects, & Land Surveyors, PC with surrounding land surveys and deeds; but all existing documents were ignored.

72.     I again sought help from HH&K meeting with different attorneys who said things like "It is nice you have paid taxes on someone else's land" "Statute of limitation's does not effect this, the boundaries are either accurate or they are not" "This is a survey issue". Page 44

73.     I attempted to get an out of the local area survey company; but due to the extreme cost and their insistence that there were honest surveyors in the local community, I hired Rasmussen Land Survey, PLLC on May 18, 2016 to do title research and afterwards a property survey.

74.     After witnessing deliberate falsification by Ronald Green LLS walking away when using a GPS device and getting under tree cover 3 times at established land survey monuments that were in the open and then telling me "to get a more accurate reading", I was disgusted; but I was given insight into what

was causing the problem. Jenee' Rasmussen-Green LLS commented that the *"the deed is wrong"*. She later withdrew the statement; but it was already duly noted.

75.     Rasmussen Land Survey, PLLC then went on to draft their survey to duplicate Southern Tier Surveyors, LLS work, again ignoring existing property irons, surrounding deed's and surveys; but most of all the fact that *"the deed is wrong"*.

76.     In so doing, the irons were set according to the Southern Tier Surveyors. LLS survey Page 32; but distances were listed reflecting the Southern Tier Surveyors, LLS survey Page #31.

77.     Rasmussen Land Survey, PLLC also illegally altered the right of way parcel by shifting it onto my brother John A. Finns' property to justify their falsified survey.  Rasmussen Land Survey, PLLC moved the access road against deed description and an existing property survey that showed its deeded location.

Page #40     Existing Survey by Koertz, LLS showing the true location

Page #41     Rasmussen Survey moved it telling me "now you have access"

78.     Due to Rasmussen Land Survey, PLLC falsifying their work, a portion of my brother, John A. Finn's, property was taken to support the deed fraud cover-up.

79.     I had noticed on my copy of the Koertz, LLS survey map a hand written note about 'placing missing iron'. This note was removed and my copy of the survey was replaced with one without the note. Page #40

80.     Upon contacting the New York State Police I was told they do not have the resources to investigate the matter.

81.     The replaced survey copy was a half intelligent attempt to cover up the moving of the access road; but the replaced Koertz survey copy still had an iron placed on the map and in the key to the survey. Strangely, the iron placed by Koertz was even noted on the survey map by Rasmussen Land Survey, PLLS. Page #41

82.     Afterwards I looked closer at everything in my possession and spent months in the New York Broome County records department searching all the deeds in the first 200 plus books of deeds.

83.     I emailed Katherine A. Fitzgerald on November 9, 2020 telling her I had figured it out, all but who had prepared the deed back in 1984.

84.     Katherine A. Fitzgeralds' reply stated she had no idea who had prepared the deed. Page #30

85.     I then called HH&K and asked for records; but was told that they had no records of ever having performed the work.

86.     On June 1, 2021 I received some dated paperwork that was from the 1980's that revealed that Hinman Howard & Kattell, LLC had performed the deed work and pinpointed that Katherine A. Fitzgerald had drafted the deed. Page's #22 & #23

87.     In my attempt's to correct this I have tried to submit a correction deed twice. The first time the Broome County Clerk declared that none of it could be substantiated even though it was merely wording the correction deed like my original deed that the three commissioners' swore represented the same property.

88.     On my second attempt the clerk told me they do not do correction deed's any more; that I would have to sell it with the rewording, pay a judge's fee and pay sales tax on the value of the property.  Of course this was a verbal conversation both times so I have no written proof.

89.     Throughout this I have approached The New York State Education Department Office of Professional Discipline, New York State Attorney Generals Office on multiple occasions throughout the year's 2017 through 2020 and the New York State Attorney Grievance Committee in Albany New York. The last two New York State Governor's Office's and the New York State Attorney Generals Land Theft Department;  All refused to do anything stating it is a matter for the courts. I even sent a letter to the Department of Justice. Page's #34, #35, #36 & #37

90.     I ask the court to examine the documents that show the clear intent to defraud my family and subjecting me to a lifetime of mental and physical anguish caused by all of the defendant's.

91.     As a result of the defendants' civil conspiracy and/or collusion. Plaintiff has been damaged monetarily and has had a 40 year happy marriage end due to my persistence of righting our deed.

92.     The plaintiff has approached HH&K on numerous occasions' to reverse the fraudulent commissioners' deed and correct my property deed; but have been ignored or refused every time.

93.     The defendants owed George H. Finn a duty under the 5th and 14th Amendments not to violate his rights under the United States Constitution as a citizen of the United States. The defendants' overt acts of attempted fraud denied him due process of law by ineffective assistance of council and fraudulently

altering his land description and keeping the act concealed from him until he discovered proof 38 years later.

94.     The plaintiff respectfully requests judgments of the court against the above named defendant's awarding to plaintiff (i) damages of returned fee's paid to the defendant's; (ii) pre- and post-judgment interest; (iii) costs, including reasonable attorney fees, for this action; and (iv) injunctive relief enjoining all defendants from continuing the intentional infliction of emotional distress; and (v) any other relief deemed just and equitable by the jury and court.

95.     I, George H. Finn, am requesting that this not be held in the Federal Court in Binghamton, NY due to the interconnections of the professional's in the community and a majority of the resident's. I do not feel I can get a fair hearing. I am asking for the case to be held in Syracuse New York which is in the Northern District Jurisdiction

96.     In the year 2000 the District Attorney told me that timber theft was ok because the logger believed he was on his clients' property; even after asking to buy the timber and I refused. The recent District Attorney told me that falsifying a survey and embezzling me out of $5800 is not a crime, "Where's the crime?"

97.  I am asking the court to right my deed and have all fraudulent documents stricken from the hall of records.  The documents can remain in the court files.  I do not want the document's causing my grandchildren to relive this.  Thieves are thieves and they will try again just as they have with this criminal conspiracy.

98.  I am requesting a District Justice.

Respectfully submitted,
George H. Finn
227 Springsteen Road
Windsor, NY 13865
Phone: (207) 242-2114
By_____
George H. Finn. Pro se

## SUPPORTING DOCUMENT'S

### HINMAN, HOWARD & KATTELL
#### ATTORNEYS AT LAW

BINGHAMTON, NEW YORK 13901-3490

(607) 723-5341

JOHN M KLELER
JOSEPH P MINNICH, JR
MORRIS OTTUT Z
A LAYR    E ABRAMS
CHARLE     SH
CLA/TO A. AXTELL, JP
EDVARD   TERRELL, JR
WARRE     ANDERSON
A TOW     .BU
MARTIN   HOLLERAN JP
C ADDISON KEELER
JOHN S       DGE
KEITH E  JMER
COLIN T. NAYLOR, III
RICHARD H PILLE
N. THEODORE SOMMER
EUGENE   PECKHAM
JOHN C FISH
JAMES L FISHVERS
JAMES M  AYES
PETER J  JONA
ERIK EDWARD JOH
LAWRENCE C. ANDERSON
HOWARI  M RITTBERG

ALSO ADMITTED IN FLORIDA

GEORGE L HINMAN
COUNSEL

CLAYTON M AXTELL, III
M LIZANETH BRADLEY
JAMES S GLEASON
JAMES F. LEE
NELSON F. MIGDAL
JOHN G DOWD
LEE R. CRBA
KATHERINE A FITZGERALD
JAMES R. FRANZ
LEONARD J. VAN RYN
MICHAEL D VENUTI

4600 OCEAN BOULEVARD
BOYNTON BEACH, FLORIDA 33435
(305) 276-1008

FIRST CITY BANK BLDG
1310 NORTH STREET
ENDICOTT, NEW YORK 13760
(607) 723-5341

May 30, 1984

Nelson F. Migdal, Esq.
Scanlon & Vetrano
1201 E. Main Street
Endicott, NY 13760

     Re: Finn v. Thrasher

Dear Nelson,

     I represent the plaintiff in the above-named partition matter.  The defendant has defaulted entirely in the matter.  On April 24, 1984, Judge Kuhnen signed an Interlocutory Judgment decreeing partition as to the plaintiff only.  I enclose a certified copy of that Judgment and Appendix "A", being an abstract of title to the lands now held in the names of George H. Finn and Charles Thomas Thrasher, as joint tenants.

     The Interlocutory Judgment appointed you, Harvey Shapiro and Vince Vetrano as commissioners designated to make a conveyance to the plaintiff in fee simple of an absolute undivided interest in the premises.  I, therefore, enclose a proposed commissioner's deed, a report of commissioners that will be filed with the Broome County Clerk, an oath for the commissioners to take and sign that will also be filed with the Broome County Clerk, a transferor's affidavit re capital gain tax, and my proposed judgment for the Court confirming partition and the report of the commissioners.

     If you wish to review the relevant sections of the law on this matter, they are New York Real Property Actions and Proceedings Law, Section 921(2) and Section 927.  If you find the papers as drafted acceptable, I would ask that you, Harvey and Vince sign the oath, the deed and the report of the commissioners in the presence of a Notary.  One only need sign the

Nelson F. Migdal, Esq.                    -2-                    May 30, 1984

transferors' affidavit with regard to capital gains tax.

     If you have any questions, please call me.  There is a space on the
judgment confirming partition for you to write in the amount of your fee.
I thank you, Harvey and Vince for your assistance and cooperation in this
matter.

                          Very truly yours,

                          HINMAN, HOWARD & KATTELL

KAF/sao                          By
Enclosures                           Katherine A. Fitzgerald

cc:  Mr. George H. Finn



FORM 8034  N.Y. DEED—WARRANTY with Lien Covenant

## This Indenture,

Made the 14th day of
Nineteen Hundred and Seventy-Four

**THOMAS B. FINN** and **HARRIET L. FINN**, residing at R.D. 3,
Windsor, Broome County, New York

*parties of the first part, and*

**GEORGE H. FINN** and **CHARLES THOMAS THRASHER**, residing at
R.D. 3, Windsor, New York, as joint tenants with the
right of survivorship

*parties of the second part,*

**Witnesseth** that the part ies of the first part, in consideration of
One——————————————————— Dollar ($1.00 )
lawful money of the United States, and other good and valuable consideration
paid by the part ies of the second part, do hereby grant and release unto the
part ies of the second part, the survivor, his and assigns forever, xxx
distributees/

ALL THAT TRACT OR PARCEL OF LAND, situate in the Town of Colesville,
Broome County, New York, supposed to contain thirty-three acres of
land, more or less, bounded and described as follows: on the north by
lands now or formerly owned by Simon F. Quick; on the east by
lands now or formerly of Theodore Bengell; bounded on the south by the
northerly boundary line of the Town of Windsor, and on the west by
lands now or formerly of George C. Cumber; the premises hereinabove
described and hereby intended to be conveyed as a part of the 108
acres of land, more or less, conveyed by John A. Perdon to James A.
Berry and Ines Berry by deed dated May 6, 1927 and recorded in
Broome County Clerk's Office May 9th, 1927, in Book 373 of Deeds at
page 257; such 108 acres being situate partly in the Town of Colesville
and partly in the Town of Windsor, Broome County, New York.
      Being the same premises conveyed by James A. Berry and Ines E. Berry
his wife, to Cloyde A. Springsteen and Ina M. Springsteen, his wife,
as tenants by the entirety, by warranty deed dated November 1, 1927
and recorded in Broome County Clerk's Office on November 26, 1927 in
Liber 376 of Deeds at page 153; and also being the same premises
quitclaimed to Cloyde A. Springsteen and Ina M. Springsteen, his wife,
by Clyde Vance, et al, by deed dated September 9, 1940 and recorded
in Broome County Clerk's Office on September 9, 1940 in Liber 502 of
Deeds at page 480, such quitclaim deed having been given to clarify
or correct the description in the above described deed given by James
A. Berry and Ines E. Berry, his wife.
      There is also hereby granted a right of way for ingress and egress
to the above described parcel of land the following described parcel
of land:  ALL THAT TRACT OR PARCEL OF LAND situate in the Town of
Windsor, Broome County, New York, bounded and described as follows:
Beginning at the intersection of the north line of Springsteen Road
in the said Town of Windsor and the west property line of Robert J.
Peters and Barbara Peters (Book 1195 of Deeds at page 442, Broome
County Clerk's Office); thence in a northerly direction along the west
property line of said Peters a distance of approximately 1045 feet to
the division line between the Town of Windsor and the Town of Coles-
ville; thence westerly along the said division line between Windsor
and Colesville a distance of 120 feet to a point; thence in a souther-
ly direction and on a line parallel to the first described line herein
a distance of 50 feet to a point; thence easterly on a line parallel
to the said division line between Windsor and Colesville a distance
of 54 feet to a point; thence in a southerly direction and on a line
parallel to the first described line herein a distance of approximately
995 feet to the north line of said Springsteen Road; thence easterly
along the north line of said Springsteen Road to the point or place of
beginning.  This is a permanent right of way and is to go with the
land.  The grantors herein reserve the right to grant rights of way
for ingress and egress to adjacent parcels of land either in the Town
of Windsor or the Town of Colesville.
      Being a portion of the premises conveyed to the grantors herein by
Joseph E. Finn by deed dated August 16, 1973 and recorded on
August      1973 in Broome County Clerk's Office in Book      of Deeds
at page



**Together** with the appurtenances and all the estate and rights of the part ies of the first part in and to said premises,

**To have and to hold** the premises herein granted unto the part ies of the second part, the survivor of them, his distributees and assigns forever.

**And** said THOMAS B. FINN and HARRIET L. FINN covenant as follows:

**First.** That the parties of the second part shall quietly enjoy the said premises;

**Second.** That said THOMAS B. FINN and HARRIET L. FINN will forever **Warrant** the title to said premises.

**Third.** That, in Compliance with Sec. 13 of the Lien Law, the grantor will receive the consideration for this conveyance and will hold the right to receive such consideration as a trust fund to be applied first for the purpose of paying the cost of the improvement and will apply the same first to the payment of the cost of the improvement before using any part of the total of the same for any other purpose.

**In Witness Whereof,** the part ies of the first part have hereunto set their hands and seals the day and year first above written.

**In Presence of**

(Consideration less than $100.00)

State of New York
County of Broome } ss. On this 14 th day of January
before me, the subscriber, personally appeared Nineteen Hundred and Seventy four

THOMAS B. FINN and HARRIET L. FINN

to me personally known and known to me to be the same persons described in and who executed the within instrument, and he severally acknowledged to me that they executed the same.

Dawn Maclai

REAL ESTATE TRANSFER TAX   STATE OF NEW YORK   = 0 0.00

DAWN MARAI
Notary Public, State of New York
Residing in Broome County
My commission expires March 30, 19__

: ·1407 ᴘᴀɢᴇ370          04738

BROOME COUNTY,
Recorded on the 8 day of
June 1984 at 4:20 o'clock
M. in Liber 1407 of Deed
on page 370 and examined

Clerk
Carl A. Young

### COMMISSIONERS' DEED IN PARTITION

THIS DEED, made the 6th day of June, nineteen hundred
and eighty-four, between NELSON F. MIGDAL, HARVEY SHAPIRO and VINCENT
VETRANO, Commissioners duly appointed in the action hereinafter mentioned,
Grantors, and GEORGE H. FINN, 113 Croyden Court, Apt. 4, Silver Springs,
Maryland 20901, Grantee:

WITNESSETH, that the Grantors, the Commissioners appointed in an
action in partition between George H. Finn, plaintiff, and Charles Thomas
Thrasher, defendant, in pursuant of an interlocutory judgment entered at a
special term of the Supreme Court, on the 24th day of April, 1984, do
hereby grant and convey unto the grantee:

ALL THAT TRACT OR PARCEL OF LAND, situate in the Town of
Colesville, Broome County, New York, supposed to contain
thirty-three acres of land, more or less, bounded and described
as follows:  on the north by lands now or formerly owned by Simon
P. Quick; on the east by lands now or formerly of Theodore
Beagell; bounded on the south by the northerly boundary line of
the Town of Windsor, and on the west by lands now or formerly of
George C. Cumber; the premises hereinabove described and hereby
intended to be conveyed are a part of the 108 acres of land, more
or less, conveyed by John A. Pordon to James A. Berry and Inez
Berry by deed dated May 6, 1927 and recorded in Broome County
Clerk's Office May 9th, 1927, in Book 373 of Deeds at page 257;
such 108 acres being situate partly in the Town of Colesville and
partly in the Town of Windsor, Broome County, New York.

An early survey shows the property to be approximately 26
chains, 58 links on the east side, thence running in a westerly
direction 21 chains to a point, thence running in a northerly
direction 20 chains, fifty links to a point; thence running in an
easterly direction 10 chains, 34 links to a point, thence running
northerly 6 chains to a point, thence running in an easterly
direction 10 chains, 67 links to a point, said point being the
north end of the easterly side, the first described course above.

Being the same premises conveyed by James A. Berry and Inez
E. Berry, his wife, to Cloyde A. Springsteen and Ina M.
Springsteen, his wife, as tenants by the entirety, by warranty
deed dated November 1, 1927 and recorded in Broome County Clerk's
Office on November 26, 1927 in Liber 376 of Deeds at page 153;
and also being the same premises quitclaimed to Cloyde A.
Springsteen and Ina M. Springsteen, his wife, by Clyde Vance, et
al, by deed dated September 9, 1940 and recorded in Broome County
Clerk's Office on September 9, 1940 in Liber 502 of Deeds at page
480, such quitclaim deed having been given to clarify or correct
the description in the above described deed given by James A.
Berry and Inez E. Berry, his wife.  Also being a portion of the
premises conveyed to Thomas E. Finn and Harriet L. Finn by Joseph
E. Finn by deed dated August 16, 1973, and recorded on August 16,
1973, in Broome County Clerk's Office in Book 1205 of Deeds at
page 27.

There is also hereby granted a right of way for ingress and
egress to the above described parcel of land the following

1407 371

described parcel of land:  ALL THAT TRACT OR PARCEL OF LAND situate in the Town of Windsor, Broome County, New York, bounded and described as follows:  Beginning at the intersection of the north line of Springsteen Road in the said Town of Windsor and the west property line of Robert J. Peters and Barbara Peters (Book 1195 of Deeds at page 442, Broome County Clerk's Office); thence in a northerly direction along the west property line of said Peters a distance of approximately 1045 feet to the division line between the Town of Windsor and the Town of Colesville; thence westerly along the said division line between Windsor and Colesville a distance of 120 feet to a point; thence in a southerly direction and on a line parallel to the first described line herein a distance of 50 feet to a point; thence easterly on a line parallel to the said division line between Windsor and Colesville a distance of 54 feet to a point; thence in a southerly direction and on a line parallel to the first described line herein a distance of approximately 995 feet to the north line of said Springsteen Road; thence easterly along the north line of said Springsteen Road to the point or place of beginning. This is a permanent right of way and is to go with the land.  The grantors herein reserve the right to grant rights of way for ingress and egress to adjacent parcels of land either in the Town of Windsor or the Town of Colesville.

Being the same premises conveyed by Thomas B. and Harriet L. Finn to George H. Finn and Charles Thomas Thrasher, as joint tenants, by warranty deed January 14, 1975 and recorded in Broome County Clerk's Office on November 12, 1975, in Book 232 of Deeds at page 88.

To have and to hold the premises herein granted unto the Grantee, George H. Finn, and assigns forever.

IN WITNESS WHEREOF, the Grantors have hereunto set their hands and seals.

Nelson F. Migdal

Harvey Shapiro

RECEIVED
JUN 8 1984
REAL ESTATE TRANSFER TAX
BROOME COUNTY, NEW YORK

Vincent Vetrano

STATE OF NEW YORK
COUNTY OF BROOME     SS.

On this 4th day of June, 1984, before me personally came NELSON F. MIGDAL, HARVEY SHAPIRO and VINCENT VETRANO, to me personally known to be the persons described above and designated as Commissioners to make said conveyance by interlocutory judgment of the Supreme Court dated April 24, 1984, and to be recorded in the Office of the Clerk of Broome County simultaneously with the foregoing instrument, and acknowledged to me that they had executed the foregoing instrument as said Commissioners.

Notary Public

KAREN E. POMEROY
Notary Public, State of New York
Residing in Broome County
My Commission Expires March 30, 19__

State of New York
Broome County Clerk's Office } ss.:

I, RICHARD A. HOGAN, Clerk of the said County, and of the County Court and Supreme Court of the State of New York, appointed to be held. in and for said County, being Courts of Record, having a common seal, do hereby certify that I have compared the annexed copy of .........

*Commissioner's field ... ... ... ... ...*

*Jane H. Mygdol, Harry Chapman & Vincent*

*Veltran* ......................................................................

..........................................................................

...................................................... ~~with the record of~~
.................................................... with the original

~~recorded~~

thereof filed and entered. . . . *June 8, 1984* . . . . . . . . . . .
now remaining on file and of record in my office, and that the same is a correct and true copy of said original, and of the whole thereof.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed the Seal of the said County and Courts, at the City of Binghamton, this
*1 6*      day of      *Feb*      , 19 *88*

By *William J. Ryan* . . . . . . . . . . . . . . . . .Deputy Clerk

RICHARD A. HOGAN, Clerk

FORM 111

28

Being the same premises conveyed by Thomas B. and Harriet L. Finn to George H. Finn and Charles Thomas Thrasher, as joint tenants, by warranty deed January 14, 1975 and recorded in Broome County Clerk's Office on November 12, 1975, in Book 232 of Deeds at page 88.

To have and to hold the premises herein granted unto the Grantee, George H. Finn, and assigns forever.

IN WITNESS WHEREOF, the Grantors have hereunto set their hands and seals.

_Nelson F. Migdal_
Nelson F. Migdal

_Harvey Shapiro_
Harvey Shapiro

_Vincent Vetrano_
Vincent Vetrano

RECEIVED
JUN  8 1984
REAL ESTATE TRANSFER TAX
BROOME COUNTY NEW YORK

STATE OF NEW YORK
COUNTY OF BROOME    SS.

On this _6th_ day of _June_, 1984, before me personally came NELSON F. MIGDAL, HARVEY SHAPIRO and VINCENT VETRANO, to me personally known to be the persons described above and designated as Commissioners to make said conveyance by interlocutory judgment of the Supreme Court dated April 24, 1984, and to be recorded in the Office of the Clerk of Broome County simultaneously with the foregoing instrument, and acknowledged to me that they had executed the foregoing instrument as said Commissioners.

_Karen E. Pomeroy_
Notary Public

KAREN E. POMEROY
Notary Public, State of New York
Residing in Broome County
My Commission Expires March 30, 19__

Being the same premises conveyed by Thomas B. and Harriet L. Finn to George H. Finn and Charles Thomas Thrasher, as joint tenants, by warranty deed January 14, 1975 and recorded in Broome County Clerk's Office on November 12, 1975, in Book 232 of Deeds at page 88.

From: **George Henry Finn II** ghfinnii@icloud.com
Subject: **Re: Wondering**
   Date: **Nov 9, 2020 at 12:50:01 PM**
      To: **Fitzgerald, Katherine A.** kfitzgerald@hhk.com

**Do you think HH&K would help me after all that has transpired?
If so I look forward to it.**


**Life is the only thing that gets into the way of living.**

**ghfii**


**On Nov 9, 2020, at 11:17 AM, Fitzgerald, Katherine A.
<kfitzgerald@hhk.com> wrote:**


**Hi George, I honestly don't know who in our real estate department did
it. Most of the lawyers who worked in real estate at that time are no
longer with us. They have either left the area, retired or passed away. I
would encourage you to sit down with a real estate lawyer and even if
they don't want to take the case themselves, they could walk you
through the procedure to file in court. There might be a way you could
simply make a motion to correct the deed, but I really don't know
because I am not a real estate attorney. Perhaps taking this approach
with a lawyer would make it easier for you to get advice.: You would
just be setting up a meeting to have them explain how to do this and
paying them for that advice, but not asking them to represent you. I
hope this is helpful. Kate**

---

**From:** George Henry Finn II <ghfinnii@icloud.com>
**Sent:** Monday, November 9, 2020 11:09:38 AM
**To:** Katherine A. Fitzgerald <kfitzgerald@hhk.com>; Katherine Fitzgerald <fitz@hhk.com>
**Subject:** Wondering


**Kate**







MAKE CHECKS PAYABLE TO:
ETHEL J OLIVER
TAX COLLECTOR
BOX 27 WELTON STREET
HARPURSVILLE NY 13787

TOWN OF COLESVILLE
TOWN AND COUNTY
TAXES FOR 1984

STATEMENT OF TAXES
FISCAL 01-01-84
YEAR 12-31-84
WARRANT DATED 01-01-84

PROPERTY DESCRIPTION
032600 8-35                    II
ACRES-    55.38
CLS-321  ROLL SECT-1 SCH-C35001

PROPERTY LOCATION
INSIDE LOT

ACCOUNT NUMBER
26065100000

BANK CODE
0

TO:
FINN GEORGE H
THRASHER CHARLES THOMAS
113 CROYDON COURT APT 4
SILVER SPRINGS MD 20901

TOWN

ESTIMATED STATE AID IS
131,985

TAXES PAID BY _____ SEE MESSAGES REVERSE SIDE

---

Tax ID# 149.00-1-3          **2000 Colesville Town & County Taxes**          Bill #   002846

Fiscal Year 01/01/2000 to 12/31/2000   * Warrant Date 01/01/2000     Escrow #     Bank #  0000000

**Pay by mail to:** | In Person Payment: | Monday through Friday during regular banking hours | Property Description and Location
Town 032600   School 035001
Location:  227 SPRINGSTEEN RD
Class    240          Roll Sect. 1
Account No.    26065100000
Mortgage No.
Front  0.00    Depth 0.00
Acres   49.70

*Property Taxpayer's Bill of Rights*

The Assessor estimates the FULL MARKET VALUE OF THIS PROPERTY as of 03/01/199  was          68929
The assessed value of this property as of  03/01/1999
was         7720 .The UNIFORM PERCENTAGE OF VALUE used to establish assessments was      11.20 %.
If you feel your assessment is inequitable, you have the right to seek a review. For further information please contact  your assessor for the booklet "How to File a Complaint". Please note that the period for filing complaints on the above assessment has passed. Estimated State Aid          0

FINN GEORGE H                     26065100000
227 SPRINGSTEEN ROAD
WINDSOR N Y 13865

From: **Lindemann, Brian** Brian.Lindemann@ag.ny.gov
Subject: **[Not Virus Scanned] Cleaned file**
Date: **Sep 3, 2020 at 11:03:20 AM**
To: **George Henry Finn II** ghfinnii@icloud.com

George H. Finn II
227 Springsteen Rd
Windsor, NY 13865

Re:      Our File Number:  20-044204
Subject:  Hinman, Howard & Kattell, LLP et al.

Dear Mr. Finn:

Your complaint has been carefully reviewed by our office staff, including by the head of our
regional office, Assistant Attorney General In-Charge Michael Danaher.  Unfortunately, it has
been determined that your problem is not one for which our office can offer assistance.  Only a
court of law may determine what your rights are in this situation.

It has been suggested that if you have not already done so, you may wish to discuss this
matter with a private attorney.  In the event you need a referral, I suggest you contact your
county bar association or, in the alternative, the New York State Bar Association's Lawyer
Referral Service at 1-800-342-3661.  Typically, initial consultations are relatively inexpensive
and do not commit you to further representation.  This office cannot represent individual
consumers in court or give individual legal advice.

Thank you for writing to us.  I regret that our office will not be able to assist you in this matter.

Respectfully,

Brian Lindemann
Consumer Frauds Representative
New York State Office of the Attorney General
Bureau of Consumer Frauds and Protection
Binghamton Regional Office
44 Hawley St.
Binghamton, NY 13901

**From:** George Henry Finn II <ghfinnii@icloud.com>
**Sent:** Wednesday, September 2, 2020 3:32 PM
**To:** Lindemann, Brian <Brian.Lindemann@ag.ny.gov>
**Subject:** [Not Virus Scanned] Cleaned file

[EXTERNAL]
This copy is unlocked and cleaned up my mistakes.



*State of New York*
*Supreme Court, Appellate Division*
*Third Judicial Department*
**Attorney Grievance Committee**
*286 Washington Avenue Extension, Suite 200*
*Albany, NY 12203-6320*
*http://www.nycourts.gov/ad3/agc*

Mark S. Gorgos, Esq.
Committee Chair

Phone: (518) 285-8350
Fax: (518) 453-4643
Email: ad3agc@nycourts.gov
**(Service by email/facsimile is accepted/preferred)**
**CONFIDENTIAL**

Monica A. Duffy
Chief Attorney

September 9, 2020

*VIA: Email at ghfinnii@icloud.com*

George H. Finn
227 Springsteen Road
Windsor, NY 13865-1507

Re:  Notice of Declination to Investigate a Complaint

Dear Mr. Finn:

This will acknowledge receipt of your complaint dated July 28, 2020, regarding an attorney.

Please be advised that the function of this Committee is to investigate acts of professional misconduct committed by attorneys. When a complaint is received, we review it to determine if it involves behavior which could constitute professional misconduct by the attorney. An attorney may be found to have engaged in professional misconduct if it can be proven that an ethical rule or law was violated. If there is a sufficient basis to conduct an investigation, the Committee will do so. However, pursuant to Part 1240. Rules for Attorney Disciplinary Matters, § 1240.7(d)(1)(i), there are instances where the Committee, after initial screening, may decline to investigate a complaint due to other reasons.

After careful review, it has been determined that the issues you raise are more appropriate for resolution by a court of law or through other available legal remedies in the first instance. If it is your feeling that your legal rights need protection, we recommend that you consult with an attorney of your own choosing. The Committee is not permitted to give you legal advice or act as your attorney.

Therefore, although we appreciate your efforts, we are unable to assist you.   Please be advised that pursuant to Rule § 1240.7(e)(3) you may submit a written request for reconsideration of this determination by correspondence addressed to the Chairperson of the Committee and sent to the address listed above **within thirty (30) days from the date of this letter.  Your written request**

for reconsideration must be based on information and/or argument not previously presented to the Committee.  If you seek reconsideration, please allow us up to ninety days for processing your request.

Sincerely,

Monica A. Duffy
Chief Attorney
MAD/jrp

United States Department of Justice

Criminal Division. OCGS
1301 New York Avenue, NW
Washington, DC 20005

Mr. Jaffe

I am seeking to report what appears to be an organized crime effort in the State of New York to steal land. It has been going on to my knowledge since 1974. It involves legal firms, land survey companies, county officials and since defrauding a person out of nearly $7000 is not a crime, District Attorneys.

It has taken me nearly 29 years of sifting the BS, spending my hard earned money on legal assistance and land surveyors only to discover that they were covering up their own criminal activity. On June 1, 2021 I came into possession of documents to prove the crimes. Records in the Broome County Hall of Records support and give extra evidence to the activity.

In the early part of this century there was a natural gas frenzy going on in Pennsylvania, New York, Ohio and elsewhere. During this frenzy many, many land owners were complaining of after a neighbors land survey they lost 10 acres or more of land. I related to the dilemma; but was struggling trying to unravel my personal nightmare of just such an occurrence. After all the years trying to understand, it turned out to be my attorney placing a false survey description into my deed many decades prior. This gave opportunity to a friend of my attorney, a land surveyor, to alter my land and to transfer a portion of it to a neighboring property. This was enforced by many land survey companies that enforced the false survey description. I have finally revealed that the pea is not under any of the shells and can defend this with proof.

If not for the many land owners who complained about the loss; but gave up where I did not, I would have assumed my nightmare was an isolated incident. It is not, this is an organized crime effort when legal firms, land surveyors and county officials are all a party to the activity.

Thank You


George H. Finn

227 Springsteen Rd
Windsor, NY 13865
607.227.0301 cell, please note … I am partially deaf

Copy of: Tax receipts to show my assessment before the false survey description was entered into my deed.



CA 

Tax receipts to show my assessment before the false survey description was entered into my deed.



ghfii

Page 1 of 3









Statute of limitations does not affect this.  The boundary lines are either accurate or  not

-----Original Message-----
From: George Finn [mailto:ghfinnii@icloud.com]
Sent: Monday, November 20, 2017 5:53 PM
To: Levy, Lillian L.
Subject: Re: Direction

Sorry, I remember the word(s), "Statute Of Limitations"
I am not looking for anything, nothing, beyond what was and is rightfully mine. Not even an apology. It's water under the bridge. If my word is not good enough, I will sign an agreement not to discuss it ever again.
I want to go on with my life, that is not asking too much.

Have a good Thanksgiving

On Nov 20, 2017, at 2:05 PM, Levy, Lillian L. <llevy@hhk.com> wrote:

I didn't mean to say that it was not meaningful to you.
What I can do  is after Thanksgiving set an appointment with the tax department and see if I

can convince them.  What is in you favor is if they were right you have no access.  It might be worth a shot

-----Original Message-----
From: George Finn [mailto:ghfinnii@icloud.com]
Sent: Monday, November 20, 2017 1:59 PM
To: Levy, Lillian L.
Subject: Re: Direction

It  might be a drop in the bucket for them; but it is half my SS checks for the year. We both know this place is worthless without legal access.

Where is the survey of my brothers property? Everything seems to vanish while in the records office. They did not access my 55+ acres on a dream. The line was drawn to that stake for nearly 40 years after my father moved it to give 1. Thomas & me access 2. To not have the access in the center of Johns land. Another brother.
3. Not even a shred of intent?

There have been official documents that have been destroyed. I think I can show this. The line was not drawn to the stake where it has been moved from  after 40 years without bread crumbs. There is a lot

of corruption going on in the records department, bet on it. I am going to.
Thanks for your help
Please have billing send me a bill for your time.
George


On Nov 20, 2017, at 1:38 PM, Levy, Lillian L. <llevy@hhk.com> wrote:

To go to court or to convince the assessor's office that a mistake was made, you will need a survey. We really can't do much without a survey. We can fight the tax assessment but we won't do that to early next year. The assessor won't care about this. Compared to the county budget, the difference in taxes is a drop in the bucket

-----Original Message-----
From: George Finn [mailto:ghfinnii@icloud.com]
Sent: Monday, November 20, 2017 11:10 AM
To: Levy, Lillian L.
Subject: Direction

Lillian,
I was wondering what the best direction for me would be.
I am going to order them in my view:

1. Get my assessment to reflect the true value without access.
2. Get into court. The intent and reasons why are now prevalent.
3. Waste your time & my limited dollars having you try to get the tax map people to reveal their wrong doing's.

The reason I place 1. first is because I think hitting the town/county where it hurt's will give them incentive to look into what is happening within the official office's.

I need to get my coarse defined. I spent another sleepless night, my wife joined me <u>at 3AM</u> in front of the DVD player.

I would also like you to give me an estimate of what fee's I will be facing for each course of action. Again I think the assessment will be the least costly.

Welcome back
Thank You
George

<u>607.227.7322</u>

| | |
|---|---|
| **From:** | "Fitzgerald, Katherine A." <kfitzgerald@hhk.com> |
| **To:** | "george finn" <ghfinn@gmail.com> |
| **Sent:** | Wednesday, June 12, 2013 2:39 PM |
| **Subject:** | RE: deed |

Hi George:  Thank you for the most kind words.    You can search any property back at the County Clerk's office.  You can look at tax maps at the local Assessor's office.    You can hire an Abstract Company to do it for you but of course that is expensive.  Hope this helps.  I am well and hope the same for you and yours.  You and I go back 30 years now!  Kate

**From:** george finn [mailto:ghfinn@gmail.com]
**Sent:** Tuesday, June 11, 2013 10:59 AM
**To:** Fitzgerald, Katherine A.
**Subject:** Re: deed

Kate,
Thank you. I guess I approached you because you warned me of the "strange" thing done on my deed when you did the, forgive me if this is the wrong nomenclature, title search. I had approached a real estate person at HHK only to have the "get a survey" snapped at me. The problem I have need's to be looked at so that the survey will correct itself.

If nothing else can you tell me where to start to search title's or deed's backwards for property? If not, thank you anyway.

I hope this find's you well and in good health.

My dad met Katherine Hepburn way back in the 40's fishing in FL and said to me, "now that's a lady". I guess it is an underlying quality that is inherited with the name, Katherine. Please don't blush, 24k is 24k.

George


On Tue, Jun 11, 2013 at 9:28 AM, Fitzgerald, Katherine A. <kfitzgerald@hhk.com> wrote:
George: Hi.  It would be better for you to talk to one of our real estate attorneys.  I have not practiced real estate in over 20 years.    Kate

**From:** george finn [mailto:ghfinn@gmail.com]
**Sent:** Tuesday, June 11, 2013 9:20 AM
**To:** Fitzgerald, Katherine A.
**Subject:** deed

Kate,

Can you give me some advise related to my deed. I know you are doing matrimonial work these days; but your skill's and knowledge are needed in other field's. If so, I can come when convenient to you, show you what I have and at least getting your response, know I have done everything in my power.
Thanks
George

5/16/2022

**From:**    "Fitzgerald, Katherine A." <kfitzgerald@hhk.com>
**To:**      "george finn" <ghfinn@gmail.com>
**Sent:**    Thursday, June 13, 2013 10:43 AM
**Subject:** RE: deed

Do you want the name of a real estate lawyer or the name of an abstract company?

**From:** george finn [mailto:ghfinn@gmail.com]
**Sent:** Wednesday, June 12, 2013 8:23 PM
**To:** Fitzgerald, Katherine A.
**Subject:** Re: deed

Kate,
Would you "name drop" someone you think is capable of handling a 'sticky' issue. You brought it to
light now I need to correct it on my own because the only person who knew the particulars passed away
in 81, my father. They tried to do it with him; but did not have any success. I have hard evidence that
things are not what is trying to be done to my land.

I know, 30 years, the kids were infants then. Now they are grown and gone. I miss their little feet
scampering about .... life does have sadness now and then.
George

On Wed, Jun 12, 2013 at 2:39 PM, Fitzgerald, Katherine A. <kfitzgerald@hhk.com> wrote:
Hi George:  Thank you for the most kind words.   You can search any property back at the
County Clerk's office.  You can look at tax maps at the local Assessor's office.   You can hire
an Abstract Company to do it for you but of course that is expensive.  Hope this helps.  I am
well and hope the same for you and yours.  You and I go back 30 years now!  Kate

**From:** george finn [mailto:ghfinn@gmail.com]
**Sent:** Tuesday, June 11, 2013 10:59 AM
**To:** Fitzgerald, Katherine A.
**Subject:** Re: deed

Kate,
Thank you. I guess I approached you because you warned me of the "strange" thing done on my deed
when you did the, forgive me if this is the wrong nomenclature, title search. I had approached a real
estate person at HHK only to have the "get a survey" snapped at me. The problem I have need's to be
looked at so that the survey will correct itself.

If nothing else can you tell me where to start to search title's or deed's backwards for property? If not,
thank you anyway.

I hope this find's you well and in good health.

My dad met Katherine Hepburn way back in the 40's fishing in FL and said to me, "now that's a lady". I
guess it is an underlying quality that is inherited with the name, Katherine. Please don't blush, 24k is
24k.

George

5/16/2022

| | |
|---|---|
| **From:** | "Fitzgerald, Katherine A." <kfitzgerald@hhk.com> |
| **To:** | "george finn" <ghfinn@gmail.com> |
| **Sent:** | Tuesday, June 11, 2013 9:28 AM |
| **Subject:** | RE: deed |

George: Hi.   It would be better for you to talk to one of our real estate attorneys.  I have not practiced real estate in over 20 years.    Kate

**From:** george finn [mailto:ghfinn@gmail.com]
**Sent:** Tuesday, June 11, 2013 9:20 AM
**To:** Fitzgerald, Katherine A.
**Subject:** deed

Kate,

Can you give me some advise related to my deed. I know you are doing matrimonial work these days; but your skill's and knowledge are needed in other field's. If so, I can come when convenient to you, show you what I have and at least getting your response, know I have done everything in my power.
Thanks
George

--
Today is yesterdays tomorrow; but soon to be tomorrows yesterday.
So what you did yesterday is determined by what you do today; but not realized until  tomorrow.

5/16/2022

**From:**    "Fitzgerald, Katherine A." <kfitzgerald@hhk.com>
**To:**       "george finn" <ghfinn@gmail.com>
**Sent:**     Friday, June 14, 2013 1:44 PM
**Subject:**  RE: deed

I would recommend Don Campbell at 231-6733.    He is very good at difficult problems.
dcampbell@hhk.com

**From:** george finn [mailto:ghfinn@gmail.com]
**Sent:** Thursday, June 13, 2013 12:55 PM
**To:** Fitzgerald, Katherine A.
**Subject:** Re: deed

Real Estate lawyer. I would like to show him/her what I have and point out the 'irregularity' that was
done, I am guessing back in the 1700's. You warned me of it when you did the title search, which I still
have. I think what I need to do is start there and then try to get the description of the two separate
properties that were combined to form mine, hence more searching. I will also point out the
discrepancies in the various *survey's*.

Thanks Kate


On Thu, Jun 13, 2013 at 10:43 AM, Fitzgerald, Katherine A. <kfitzgerald@hhk.com> wrote:
Do you want the name of a real estate lawyer or the name of an abstract company?

**From:** george finn [mailto:ghfinn@gmail.com]
**Sent:** Wednesday, June 12, 2013 8:23 PM

**To:** Fitzgerald, Katherine A.
**Subject:** Re: deed

Kate,
Would you "name drop" someone you think is capable of handling a 'sticky' issue. You brought it to
light now I need to correct it on my own because the only person who knew the particulars passed away
in 81, my father. They tried to do it with him; but did not have any success. I have hard evidence that
things are not what is trying to be done to my land.

I know, 30 years, the kids were infants then. Now they are grown and gone. I miss their little feet
scampering about .... life does have sadness now and then.
George


On Wed, Jun 12, 2013 at 2:39 PM, Fitzgerald, Katherine A. <kfitzgerald@hhk.com> wrote:
Hi George: Thank you for the most kind words.    You can search any property back at the
County Clerk's office.  You can look at tax maps at the local Assessor's office.    You can hire
an Abstract Company to do it for you but of course that is expensive.  Hope this helps.  I am
well and hope the same for you and yours.  You and I go back 30 years now!  Kate

**From:** george finn [mailto:ghfinn@gmail.com]
**Sent:** Tuesday, June 11, 2013 10:59 AM


5/16/2022

**From:** "Wedlake, Robert H." <rwedlake@hhk.com>
**To:** "gh finn" <ghfinn@gmail.com>
**Sent:** Saturday, February 28, 2015 9:57 AM
**Subject:** RE: I am back again

George; going to Court will cost between $3000 - $7000 and going to Court without a surveyor to back you up would be a big waste of your money - you have to have a surveyor to back you up.

**Robert H. Wedlake**
**Hinman, Howard & Kattell, LLP**
**700 Security Mutual Building**
**80 Exchange St.**
**P.O. Box 5250**
**Binghamton, New York 13902-5250**

**Direct Phone: (607) 231-6855**
**Fax: (607) 723-6605**
**Email: rwedlake@hhk.com**

This e-mail, including any attachments, may contain information that is protected by law as privileged and confidential, and is transmitted for the sole use of the intended recipient. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying or retention of this e-mail or the information contained herein is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by telephone or reply e-mail, and permanently delete this e-mail from your computer system. Thank you.

**From:** gh finn [mailto:ghfinn@gmail.com]
**Sent:** Friday, February 27, 2015 1:01 PM
**To:** Wedlake, Robert H.
**Subject:** I am back again

Robert,
If you remember I came to you about a boundary issue some years back. Well, after many sleepless night's I think I can show without a doubt my boundary was moved. The shame of it is, is that I have been unable to get a legitimate survey because it seems everyone locally looks out for each other, "The Good Old Boy Syndrome" If you would like to hear my argument, I guess that's what it is called, maybe you can tell me if I can get it in front of a judge for determination.

Appreciate your time and MATH does not lie.
George

607.743.2927
--


Loving life is nothing more than loving those within your life. I have no complaint's. Well, maybe one.

5/16/2022

| **From:** | "george finn" <ghfinn@gmail.com> |
|-----------|----------------------------------|
| **To:** | "Campbell, Donald R." <dcampbell@hhk.com> |
| **Sent:** | Monday, July 08, 2013 5:38 PM |
| **Subject:** | Re: Property drscription |

Donald,

No, the parcel I was referring to is the 22 acre parcel that was shoddily combined with the 33 acre parcel to make up my 55 acre parcel. When it was done, (what, when & where) it was done poorly. Whoever did it, combined the 2 parcels and did an extremely bad job of describing it. The survey that was referred to was for the 33 acre parcel; but who did it and where is a copy ... no idea. Someone took 2 parcels and shuffled the descriptions together; but left the description of 33 acres.I wish I had pursued the issue when Kate Fitzgerald first encountered it 30 years ago.

Maybe I will give it an attempt, there has to be something in the archives somewhere. I only thought that the professional experience would be a beneficial thing. Anyway, if you have no ideas on where to start, I'll look into it after I finish for the year. Too many things on my plate right now.

Thanks

On Mon, Jul 8, 2013 at 3:09 PM, Campbell, Donald R. <dcampbell@hhk.com> wrote:

George,

  We've reviewed the material we have and the only description of your property calls for 33 acres.The description refers to an "early survey" with dimensions which yield different acreage.The other parcel is for the area extending south into Windsor.

  Attached is a copy of a deed to property to your east.Is this the parcel you wanted? It was one of the parcels in the deed from Joseph Finn to Thomas and Harriet.

   If you have an abstract or any other material concerning title it would be helpful,Let me know

--

Today is yesterdays tomorrow; but soon to be tomorrows yesterday.
So what you did yesterday is determined by what you do today; but not realized until  tomorrow.

| | |
|---|---|
| **From:** | "george finn" <ghfinn@gmail.com> |
| **To:** | "Campbell, Donald R." <dcampbell@hhk.com> |
| **Sent:** | Wednesday, July 03, 2013 9:27 PM |
| **Subject:** | Re: Property description |

Donald,

Do you think you might be able to find the descriptions of the two separate parcels, both 33 ac & 22 ac, before they were combined? You would probably have better luck than me doing so. The only other description I am interested in is the land my deceased brother owned, the 78 ac to my east. It is almost like a triangle or maybe trapezoid would be a better label.

Thanks

242-9061 cell

743-2927 home

On Jul 3, 2013 3:06 PM, "Campbell, Donald R." <dcampbell@hhk.com> wrote:

George,

We checked and your survey is not on record.Let me know if you want us to do anything else at this time or after you have consulted a surveyor.

Don Campbell

This e-mail, including any attachments, may contain information that is protected by law as privileged and confidential, and is transmitted for the sole use of the intended recipient. If you are not the intended recipient, you are hereby notified that any use, dissemination, copying or retention of this e-mail or the information contained herein is strictly prohibited. If you have received this e-mail in error, please immediately notify the sender by telephone or reply e-mail, and permanently delete this e-mail from your computer system. Thank you.

**From:**     "george finn" <ghfinn@gmail.com>
**To:**         "Fitzgerald, Katherine A." <kfitzgerald@hhk.com>
**Sent:**      Friday, June 14, 2013 3:51 PM
**Subject:**  RE: deed

Thank you. I will try calling him Monday. Being a father this weekend.

On Jun 14, 2013 1:44 PM, "Fitzgerald, Katherine A." <kfitzgerald@hhk.com> wrote:

> I would recommend Don Campbell at 231-6733.    He is very good at difficult problems.
> dcampbell@hhk.com


> **From:** george finn [mailto:ghfinn@gmail.com]
> **Sent:** Thursday, June 13, 2013 12:55 PM
> **To:** Fitzgerald, Katherine A.
> **Subject:** Re: deed


> Real Estate lawyer. I would like to show him/her what I have and point out the 'irregularity' that was
> done, I am guessing back in the 1700's. You warned me of it when you did the title search, which I
> still have. I think what I need to do is start there and then try to get the description of the two separate
> properties that were combined to form mine, hence more searching. I will also point out the
> discrepancies in the various *survey's*.

> Thanks Kate


> On Thu, Jun 13, 2013 at 10:43 AM, Fitzgerald, Katherine A. <kfitzgerald@hhk.com> wrote:

>> Do you want the name of a real estate lawyer or the name of an abstract company?


>> **From:** george finn [mailto:ghfinn@gmail.com]
>> **Sent:** Wednesday, June 12, 2013 8:23 PM


>> **To:** Fitzgerald, Katherine A.
>> **Subject:** Re: deed


>> Kate,
>> Would you "name drop" someone you think is capable of handling a 'sticky' issue. You brought it to

light now I need to correct it on my own because the only person who knew the particulars passed away in 81, my father. They tried to do it with him; but did not have any success. I have hard evidence that things are not what is trying to be done to my land.

I know, 30 years, the kids were infants then. Now they are grown and gone. I miss their little feet scampering about .... life does have sadness now and then.

George

On Wed, Jun 12, 2013 at 2:39 PM, Fitzgerald, Katherine A. <kfitzgerald@hhk.com> wrote:

Hi George:  Thank you for the most kind words.    You can search any property back at the County Clerk's office.  You can look at tax maps at the local Assessor's office.    You can hire an Abstract Company to do it for you but of course that is expensive.  Hope this helps.  I am well and hope the same for you and yours.  You and I go back 30 years now!  Kate

**From:** george finn [mailto:ghfinn@gmail.com]
**Sent:** Tuesday, June 11, 2013 10:59 AM
**To:** Fitzgerald, Katherine A.
**Subject:** Re: deed

Kate,
Thank you. I guess I approached you because you warned me of the "strange" thing done on my deed when you did the, forgive me if this is the wrong nomenclature, title search. I had approached a real estate person at HHK only to have the "get a survey" snapped at me. The problem I have need's to be looked at so that the survey will correct itself.

If nothing else can you tell me where to start to search title's or deed's backwards for property? If not, thank you anyway.

I hope this find's you well and in good health.

My dad met Katherine Hepburn way back in the 40's fishing in FL and said to me, "now that's a lady". I guess it is an underlying quality that is inherited with the name, Katherine. Please don't blush, 24k is 24k.

George

On Tue, Jun 11, 2013 at 9:28 AM, Fitzgerald, Katherine A. <kfitzgerald@hhk.com> wrote:

George: Hi.   It would be better for you to talk to one of our real estate attorneys.  I have not practiced real estate in over 20 years.    Kate

**From:** george finn [mailto:ghfinn@gmail.com]
**Sent:** Tuesday, June 11, 2013 9:20 AM
**To:** Fitzgerald, Katherine A.
**Subject:** deed

Kate,

Can you give me some advise related to my deed. I know you are doing matrimonial work these days; but your skill's and knowledge are needed in other field's. If so, I can come when convenient to you, show you what I have and at least getting your response, know I have done everything in my power.

Thanks

George

**To:** Fitzgerald, Katherine A.
**Subject:** Re: deed

Kate,
Thank you. I guess I approached you because you warned me of the "strange" thing done on my deed when you did the, forgive me if this is the wrong nomenclature, title search. I had approached a real estate person at HHK only to have the "get a survey" snapped at me. The problem I have need's to be looked at so that the survey will correct itself.

If nothing else can you tell me where to start to search title's or deed's backwards for property? If not, thank you anyway.

I hope this find's you well and in good health.

My dad met Katherine Hepburn way back in the 40's fishing in FL and said to me, "now that's a lady". I guess it is an underlying quality that is inherited with the name, Katherine. Please don't blush, 24k is 24k.

George

On Tue, Jun 11, 2013 at 9:28 AM, Fitzgerald, Katherine A. <kfitzgerald@hhk.com> wrote:
George: Hi.   It would be better for you to talk to one of our real estate attorneys.  I have not practiced real estate in over 20 years.    Kate

**From:** george finn [mailto:ghfinn@gmail.com]
**Sent:** Tuesday, June 11, 2013 9:20 AM
**To:** Fitzgerald, Katherine A.
**Subject:** deed

Kate,

Can you give me some advise related to my deed. I know you are doing matrimonial work these days; but your skill's and knowledge are needed in other field's. If so, I can come when convenient to you, show you what I have and at least getting your response, know I have done everything in my power.
Thanks
George

--
Today is yesterdays tomorrow; but soon to be tomorrows yesterday.
So what you did yesterday is determined by what you do today; but not realized until  tomorrow.

--
Today is yesterdays tomorrow; but soon to be tomorrows yesterday.
So what you did yesterday is determined by what you do today; but not realized until  tomorrow.

| | |
|---|---|
| **From:** | "Fitzgerald, Katherine A." <kfitzgerald@hhk.com> |
| **To:** | "george finn" <ghfinn@gmail.com> |
| **Sent:** | Friday, June 14, 2013 1:44 PM |
| **Subject:** | RE: deed |

I would recommend Don Campbell at 231-6733.    He is very good at difficult problems.
dcampbell@hhk.com

**From:** george finn [mailto:ghfinn@gmail.com]
**Sent:** Thursday, June 13, 2013 12:55 PM
**To:** Fitzgerald, Katherine A.
**Subject:** Re: deed

Real Estate lawyer. I would like to show him/her what I have and point out the 'irregularity' that was
done, I am guessing back in the 1700's. You warned me of it when you did the title search, which I still
have. I think what I need to do is start there and then try to get the description of the two separate
properties that were combined to form mine, hence more searching. I will also point out the
discrepancies in the various *survey's*.

Thanks Kate

On Thu, Jun 13, 2013 at 10:43 AM, Fitzgerald, Katherine A. <kfitzgerald@hhk.com> wrote:
Do you want the name of a real estate lawyer or the name of an abstract company?

**From:** george finn [mailto:ghfinn@gmail.com]
**Sent:** Wednesday, June 12, 2013 8:23 PM

**To:** Fitzgerald, Katherine A.
**Subject:** Re: deed

Kate,
Would you "name drop" someone you think is capable of handling a 'sticky' issue. You brought it to
light now I need to correct it on my own because the only person who knew the particulars passed away
in 81, my father. They tried to do it with him; but did not have any success. I have hard evidence that
things are not what is trying to be done to my land.

I know, 30 years, the kids were infants then. Now they are grown and gone. I miss their little feet
scampering about .... life does have sadness now and then.
George

On Wed, Jun 12, 2013 at 2:39 PM, Fitzgerald, Katherine A. <kfitzgerald@hhk.com> wrote:
Hi George: Thank you for the most kind words.    You can search any property back at the
County Clerk's office.  You can look at tax maps at the local Assessor's office.    You can hire
an Abstract Company to do it for you but of course that is expensive. Hope this helps. I am
well and hope the same for you and yours.  You and I go back 30 years now!  Kate

**From:** george finn [mailto:ghfinn@gmail.com]
**Sent:** Tuesday, June 11, 2013 10:59 AM

| | |
|---|---|
| **From:** | "Fitzgerald, Katherine A." <kfitzgerald@hhk.com> |
| **To:** | "george finn" <ghfinn@gmail.com> |
| **Sent:** | Wednesday, June 12, 2013 2:39 PM |
| **Subject:** | RE: deed |

Hi George:  Thank you for the most kind words.    You can search any property back at the County Clerk's office.  You can look at tax maps at the local Assessor's office.    You can hire an Abstract Company to do it for you but of course that is expensive.  Hope this helps.  I am well and hope the same for you and yours.  You and I go back 30 years now!  Kate

**From:** george finn [mailto:ghfinn@gmail.com]
**Sent:** Tuesday, June 11, 2013 10:59 AM
**To:** Fitzgerald, Katherine A.
**Subject:** Re: deed

Kate,

Thank you. I guess I approached you because you warned me of the "strange" thing done on my deed when you did the, forgive me if this is the wrong nomenclature, title search. I had approached a real estate person at HHK only to have the "get a survey" snapped at me. The problem I have need's to be looked at so that the survey will correct itself.

If nothing else can you tell me where to start to search title's or deed's backwards for property? If not, thank you anyway.

I hope this find's you well and in good health.

My dad met Katherine Hepburn way back in the 40's fishing in FL and said to me, "now that's a lady". I guess it is an underlying quality that is inherited with the name, Katherine. Please don't blush, 24k is 24k.

George


On Tue, Jun 11, 2013 at 9:28 AM, Fitzgerald, Katherine A. <kfitzgerald@hhk.com> wrote:
George: Hi.  It would be better for you to talk to one of our real estate attorneys.  I have not practiced real estate in over 20 years.    Kate

**From:** george finn [mailto:ghfinn@gmail.com]
**Sent:** Tuesday, June 11, 2013 9:20 AM
**To:** Fitzgerald, Katherine A.
**Subject:** deed

Kate,

Can you give me some advise related to my deed. I know you are doing matrimonial work these days; but your skill's and knowledge are needed in other field's. If so, I can come when convenient to you, show you what I have and at least getting your response, know I have done everything in my power.
Thanks
George

| From: | "Campbell, Donald R." <dcampbell@hhk.com> |
|---|---|
| To: | <ghfinn@gmail.com> |
| Sent: | Monday, July 08, 2013 3:09 PM |
| Attach: | 00000000002475810000000[1].TIF |
| Subject: | Property drscription |

George,

   We've reviewed the material we have and the only description of your property calls for 33 acres.The description refers to an "early survey" with dimensions which yield different acreage.The other parcel is for the area extending south into Windsor.

   Attached is a copy of a deed to property to your east.Is this the parcel you wanted? It was one of the parcels in the deed from Joseph Finn to Thomas and Harriet.

   If you have an abstract or any other material concerning title it would be helpful,Let me know

| From: | "george finn" <ghfinn@gmail.com> |
|---|---|
| To: | <dcampbell@hhk.com> |
| Sent: | Wednesday, June 19, 2013 9:09 AM |
| Subject: | deed work |

Mr. Campbell,
Kate Fitzgerald gave me your name and I was wondering if I might be able to meet with you, show you what I have and explain what I am trying to do (to straighten out my mess). If there is a way for me to somehow see you on a rainy day, it will help me as sunny days are priority days when preparing for the upcoming winter.

If not I will hold my breath and meet with you on one of these fine rare sunny days.

607.743.2927 home.
I am usually outside working but will respond to messages.

Thank You
George H Finn

--
Today is yesterdays tomorrow; but soon to be tomorrows yesterday.
So what you did yesterday is determined by what you do today; but not realized until  tomorrow.

---

**From:**   "george finn" <ghfinn@gmail.com>
**To:**     "Joel Patch" <jpatch@hhk.com>
**Sent:**   Saturday, June 08, 2013 9:14 AM
**Subject:** Deeds

Joel,
Do you have any time to listen to some deed issues and let me know what your read is on them? If so let me know a time and date and I will come into town to show you what's up. Kate mentioned nearly 30 years ago that some hokey pokey was done to combine my 2 parcels into one and now that my father has passed away and can no longer defend it, it is causing me much distress. Anyway, if you feel like taking on a touch challenge, let me know.
George

--
Today is yesterdays tomorrow; but soon to be tomorrows yesterday.
So what you did yesterday is determined by what you do today; but not realized until tomorrow.

---

**From:**   "Speedy Gonzales" <ghfinn@gmail.com>
**To:**     <dcampbell@hhk.com>; "Robert H. Wedlake" <rwedlake@hhk.com>
**Sent:**   Tuesday, January 28, 2014 2:01 PM
**Subject:** Survey

Mr. Campbell / Wedlake,
I am not sure where to start. In our last meeting you told me that all I needed was to get another surveyor to have it done properly. This is easier said than done. I tried this, took out a loan, signed a contract (that was supposed to be done in 21 days) finally after 4 months of waiting, a surveyor crew showed up from the firm and was driving nails into my driveway. I was a little surprised when I leaned over the surveyors shoulder and saw him referencing the bogus survey . I almost had a heart attack right there on the spot. I asked him about the survey to my north that showed the boundary in 1972 and he told me his boss Bruce Snyder never showed him anything but the bogus survey and he was duplicating it. I sent e-mails to the company telling them to stop work. It seems I was ready to receive another flim flam routine.

At this instant I do not know where to turn, I had taken out a 3 year loan to pay for this survey. I can prove that the bogus survey was a slight of hand by falsifying the math and the drawing, so I might try to compose a letter to the New York State licensing board. Any recommendations? I need lawful legal help in this matter and right now do not know which way to turn.

Robert, would you be willing to look over the contract and give me some sort of evaluation on if I am going to take another hosing? Are there any judges that have property expertise that can look over what is going on and help me? I am experiencing extreme duress over this.

George H Finn
607 743 2927

--
A person cannot forgive themselves until those they have wronged forgive them.

| | |
|---|---|
| **From:** | "Speedy Gonzales" <ghfinn@gmail.com> |
| **To:** | <dcampbell@hhk.com>; "Robert H. Wedlake" <rwedlake@hhk.com> |
| **Sent:** | Sunday, January 26, 2014 1:29 PM |
| **Subject:** | Survey |

Donald,

My attempts to get a surveyor to locate the spots where the irons were moved from and get a proper survey were futile. I caught the surveyor using the bogus survey I had from Southern Tier and he said his boss never showed him the one from Ed Darling. So I asked them to stop and desist all work. I may need Mr Wedlake you to look over their contract to see what I am liable for. There are no reputable survey firms out here .... just an opinion.

If you REALLY know one, please pass on their name and number; but this time I am going to have you speak with them to clarify exactly what needs to be done.

George H Finn
607 743 2927

--

A person cannot forgive themselves until those they have wronged forgive them.



LEGEND

OIP - New ¾" Galvanized Iron Pipe
○WS- Wood Stoke with nail on property line

PROPERTY OF
ANDREW L. & DORIS L. HURLBUT
TO BE CONVEYED TO
JANE MATHER AMBRUST
&
LESLIE G. KING
TOWN OF COLESVILLE
BROOME COUNTY, N.Y.
SCALE 1"=100'        JULY 1, 1974
MAP BY: ERIC E. DARLING
SURVEY BY: EDWARD L. DARLING

May 5, 2000


Mr. Joseph Romani, District Attorney
Broome County District Attorneys Office
George R. Harvey Justice Building
Binghamton, New York

Statement of Case

Mr. Romani,
      I would like to clarify and record the statements, as I understand them. From our conversation May 4, 2000 I am being told that Mr. Robert Anderson cannot be prosecuted for timber theft because:

- He states that he felt he was on his clients property and can cut trees within a few feet and upon both sides of an existing licensed surveyors stake marking the boundary between his clients property and my own.
- That this action in itself does not constitute intent.
- He can offer to buy the timber from me yet still take it when I refuse to sell by saying that he felt it was on his clients property so this does not constitute intent.
- That his determination of the property line supercedes the line as proposed by an existing 27-year-old survey.
- That he may continue to cut even after another licensed surveyor comes in and verifies the boundary that had been set between the two properties.
- He and the tenant owners for the other parcel cannot be charged under § 9-1501.
- That the only damages I can recover are those of the proposed standing timber value and not the market value of the lumber taken.
- That I cannot recover damages from the destruction of my property during the logging process.
- I cannot recover damages from expenses such as legal fees and surveyors' costs.

If these are the statements, as I understand them can you please confirm them for me or set forth the statements in a statement of case and send it to me for my records.

Thank You


George H. Finn

 **DELTA**
ENGINEERS, ARCHITECTS, & LAND SURVEYORS    4873 NYS Route 5, Vernon, NY 13476 Tel: 315.953.4200  Fax: 315 953 4202 www.deltaengineers.com

May 14, 2013

Mr. George H. Finn
227 Springsteen Road
Windsor, New York  13865

RE:    **Cost Proposal for Professional Land Surveying Services**
Lands of George H. Finn and Susan K. Johnson
227 Springsteen Road, Town of Windsor and Colesville, Broome County, New York

Dear Mr. Finn:

Thank you for the opportunity to submit this revised cost proposal to provide professional land surveying services for your property located on the northerly side of Springsteen Road in the Town of Windsor and in the Town of Colesville, Broome County, New York.  Based on my review with you last week of the tax mapping, the aerial of the site, current survey maps and our review of the existing Deeds for this property, I have prepared the following items for your review ........

## 1.0    PROJECT DESCRIPTION

1.1    George H. Finn and Susan K. Johnson are the owners of two properties located on the northerly side of Springsteen Road with a total acreage of approximately 51 acres.  The tax parcel numbers for these parcels are 149.00-1-6 in the Town of Windsor and 149.00-1-3 in the Town of Colesville (see attached tax maps).

1.2    The Town of Windsor property is approximately 1.3 acres in size and consists of the driveway leading from Springsteen Road north to the house lot.  The Town of Colesville property is approximately 49.7 acres in size, consists of the house parcel and the remaining driveway to the house, and is mainly wooded in nature throughout this parcel..

1.3    John A. Finn owns property on the west and south side of the above referenced properties, consisting of approximately 9.60 acres of land and is tax parcel 149.00-1-5 in the Town of Windsor.

1.4    George H. Finn and Susan K. Johnson wants to purchase 5 acres from John A. Finn to add onto their property.

1.5    George H. Finn is requesting costs to perform a 2-Lot Subdivision survey of the lands of John A. Finn so that he can purchase approximately 5+/- acres of said property, along with a cost to perform a survey and stakeout of the lands that he owns in the Town of Windsor (the driveway parcel) and an additional cost to perform a boundary survey of the lands he owns in the Town of Colesville (the house parcel).

*"We are a seamless extension of our clients' organizations"*

66

## 2.0   SCOPE OF SERVICES

2.1   Perform a 2-Lot Subdivision survey of tax parcel 149.00-1-5 in the Town of Windsor owned by John A. Finn, showing pavement areas, roadways, fences, tree lines, wooded areas, power poles, existing monumentation, and any other site information within this property.

2.2   Perform all necessary deed /mapping research at the Broome County Clerk's Office.

2.3   Prepare a 2-Lot Subdivision map, showing all information located in Item 2.1.

2.4   Stakeout of all property corners of 5+/- acre cut-out with 3 ft. long iron rods with surveyors cap.

2.5   Preparation of 2 new legal descriptions of each lot of the 2-Lot Subdivision.

2.6   Preparation of up to six (6) color bond prints of final survey map and one (1) Mylar print.
-------------------------------------------------------------------------------------------------------------

2.7   Perform a boundary survey of the lands of George H. Finn, being tax parcel 149.00-1-6 (the driveway parcel) in the Town of Windsor, establishing the boundaries of this parcel.

2.8   Perform all necessary deed /mapping research at the Broome County Clerk's Office.

2.9   Stakeout of all property corners of the parcel with 3 ft. long iron rods with surveyors cap.

2.10   Preparation of proposed new legal description of the parcel. No mapping to be completed for this item.
-------------------------------------------------------------------------------------------------------------

2.11   Establish property corners of the other parcel owned by George H. Finn, being the house parcel located in the Town of Colesville and being tax parcel 149.00-1-3 (49.7+/- acre wooded acre parcel), based on adjoining survey mapping, monumentation and deeds of record. No mapping will be completed for this item.

2.12   Stakeout of all property corners of the house parcel with 3 ft. long iron rods with surveyors cap, with up to five additional rods set along the west, north and east property lines.

## 3.0   TIME SCHEDULE

Based on the size of the property and the fact that the lands are mainly wooded in nature, we anticipate completing this survey within **21 days** after written authorization to proceed is received

Page 2 of 4                           *"We are a seamless extension of our clients' organizations"*

(depending on adverse weather conditions).  If the services covered by this proposal have not been completed within this time, through no fault of Delta (delay in awarding project, adverse weather conditions, etc.), a time extension to complete our services may be renegotiated.

**4.0     COMPENSATION**

Delta Engineers proposes to provide the above services described in Items 2.1-2.6 for a lump sum fee of **$1,500.00.**

Delta Engineers proposes to provide the above services described in Items 2.7-2.10 for a  lump sum fee of **$700.00,** based on completing this work at the same time as Items 2.1-2.6.

Delta Engineers proposes to provide the above services described in Items 2.11-2.12 for a lump sum fee of **$1,500.00,** based on completing this work at the same time as Items 2.1-2.6 and/or 2.7-2.10.

All costs stated above is based on more than one item being completed at the same time.

**5.0     EXPENSES**

All expenses (deed copies, prints, map copies, etc.) are included in this cost proposal.

**6.0     EXTRA WORK REQUESTS**

If work on this project is believed by Delta Engineers to be beyond or in addition to, the Scope of Services, we will notify you immediately. Upon your written approval we will proceed with this additional work and bill the time expended at our current hourly rates.

**7.0     AGREEMENT TERMS**

If the above conditions are acceptable this proposal can become contractual by signing and dating below. The Terms and Conditions on the enclosed Exhibit A, when initialed by both parties, are incorporated and made a part of this Agreement.

Invoices unpaid after 60 days of the date of the invoice may be sent to a collection agency.  The client will be responsible for all collection charges and fees in addition to the original invoiced amount.

Please return one signed copy of this Agreement and Exhibit A to our office to serve as your authorization for us to proceed on this work. This proposal is valid for thirty (30) days from the date of this letter.

Thank you for your consideration of this proposal. Please feel free to contact me at 315-953-4200 if you have any comments or questions.

Respectfully,

Page 3 of 4                                        *"We are a seamless extension of our clients' organizations"*

DELTA ENGINEERS, ARCHITECTS, & LAND SURVEYORS, PC

Bruce W. Snyder, LS
**Director of Land Surveying**

*Enclosure: Exhibit "A"*


**Accepted:** this _____ day of _____. 2013


**By:** _____
        Signature                      Printed or Typed

*"We are a seamless extension of our clients' organizations"*