UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

GEORGE H. FINN,

                    Plaintiff,


          -v-                         3:22-CV-721

STATE OF NEW YORK,
HINMAN HOWARD &
KATTELL, LLC, KATHERINE
A. FITZGERALD, ESQ.,
HARVEY SHAPIRO, ESQ.,
NELSON F. MIGDAL, ESQ.,
RONALD SCHIESS, LLS,
BRUCE W. SNYDER, Director
of LS, DELTA ENGINEERS,
ARCHITECTS, & LAND
SURVEYORS, PC, JENEE
RASMUSSEN-GREEN,LLS,
RONALD GREEN, and
RASMUSSEN LAND SURVEY PLLC,

                    Defendants.


- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

APPEARANCES:                    OF COUNSEL:

GEORGE H. FINN
Plaintiff, Pro Se
227 Springsteen Road
Windsor, NY 13865

HON. LETITIA JAMES
New York State Attorney General
Attorneys for Defendant State of
    New York
The Capitol
Albany, NY 12224

ADRIENNE J. KERWIN, ESQ.
Ass't Attorney General

CIPRIANI & WERNER, P.C.
Attorneys for Defendants Hinman
    Howard & Kattell, LLC,
    Katherine A. Fitzgerald, Esq.,
    and Nelson F. Migdal, Esq.

PHILIP A. DAVOLOS, III, ESQ.

HARVEY SHAPIRO, ESQ.
Defendant, Pro Se
101 Tamarack Lane
Trumansburg, NY 14886

PANICCIA, BECK LAW FIRM
Attorneys for Defendants Bruce
    W. Snyder, and Delta Engineers,
    Architects, & Land Surveyors, P.C.

ALFRED PANICCIA, JR., ESQ.

COSTELLO, COONEY &
    FEARON, PLLC
Attorney for Defendants Jenee
    Rasmussen-Green, Ronald Green, and
    Rasumussen Land Survey PLLC

PAUL G. FERRARA, ESQ.

DAVID N. HURD
United States District Judge

## MEMORANDUM-DECISION and ORDER

## I. INTRODUCTION

On July 8, 2022, *pro se* plaintiff George Finn ("Finn" or "plaintiff") filed

this civil action alleging that certain defendants conspired to assist in the

theft of certain parcels of plaintiff's real property by, *inter alia*, altering a

property deed and falsifying a survey description.  Dkt. No. 1.  Plaintiff also

moved to appoint counsel, Dkt. No. 4, but that motion was denied by U.S.

Magistrate Judge Miroslav Lovric without prejudice to renew, Dkt. No. 6.

On July 21, 2022, Judge Lovric advised Finn that he bore responsibility

for serving the summonses, copies of his pleading, and General Order 25 on

the named defendants in accordance with Rule 4 of the Federal Rules of Civil

Procedure.  Dkt. No. 11.  Judge Lovric instructed plaintiff to file affidavits of

service on or before September 28, 2022.  *Id*.  And  Judge Lovric cautioned

plaintiff that his failure to do so could result in the dismissal of his case.  *Id*.

Thereafter, most of the named defendants moved to dismiss Finn's

complaint under Rule 12(b) of the Federal Rules of Civil Procedure.[1]  First to

move were defendants Delta Engineers, Architects, & Land Surveyors, P.C.

("Delta Surveyors") and Bruce W. Snyder ("Snyder").  Dkt. No. 13.  Second to

move was defendant State of New York (the "State").  Dkt. No. 16.  The third

group of movants were defendants Katherine A. Fitzgerald, Esq. ("Attorney

Fitzgerald") and Hinman Howard & Kattell, LLC (the "Firm").  Dkt. No. 24.

Finn opposed some of these motions.  Dkt. Nos. 22, 23.  But his filings

suggested that he was having trouble making sense of his obligations under

the Federal Rules of Civil Procedure.  *See, e.g.*, Dkt. No. 12 (advising Court on

---

[1]  Defendant Harvey Shapiro, Esq. ("Attorney Shapiro") answered the pleading.  Dkt. No. 19.

status of service); Dkt. No. 18 (attempting to amend pleading in piecemeal fashion); Dkt. No. 21 (attempting same).

On August 11, 2022, Judge Lovric ordered the Clerk of the Court to strike Finn's partial filings as improper.  Dkt. No. 28.  At that time, Judge Lovric explained to plaintiff he was still permitted to amend his pleading once as of right, but that in order to do so he would need to file a "wholly integrated and complete pleading that does not rely upon or incorporate by reference any pleading or document previously filed with the Court."  *Id*.  And Judge Lovric cautioned plaintiff that further amendments—after the first "freebie"—would require either his opponents' written consent or leave from the court.  *Id*.

On August 19, 2022, Finn filed an amended complaint.  Dkt. No. 33.  A few days later, Judge Lovric issued a second text order reminding plaintiff that he was obligated to serve the summonses, his amended complaint, and General Order 25 on the named defendants in accordance with Rule 4 of the Federal Rules of Civil Procedure.  Dkt. No. 34.

On August 22, 2022, Finn filed a letter motion in which he stated:

> I have been fighting for decades to obtain one thing, the undoing of what was done to my family's property deed.  If the court decides that I have no complaint and then dismiss it; I ask the court to consider just correcting the property deed.  I am attached a proposed deed to this letter in hopes that, if nothing else, I might live a few years not dealing with any of this.

Dkt. No. 35 (attaching proposed "corrected" deed).

On August 24, 2022, this Court stepped in and directed the Clerk of the Court to terminate Finn's letter motion with the attached "corrected" property deed.  Dkt. No. 39.  Because plaintiff's amended complaint had become the operative pleading, the Court further directed the Clerk to deny all of the pending motions to dismiss without prejudice as moot.  *Id*.

At that time, the Court also reminded Finn of his obligation to serve the amended complaint on his opponents.  Dkt. No. 39.  The Court reiterated to plaintiff that any further amendments to his pleading were impermissible absent defendants' consent or the Court's leave.  *Id*.  Finally, the Court cautioned plaintiff that his failure to follow these instructions or other court rules could result in the dismissal of his action.  *Id*.

On September 1, 2022, Finn filed a letter requesting additional time in which to complete service.  Dkt. No. 42.  Judge Lovric granted that request in part.  Dkt. No. 43.  At that time, Judge Lovric advised plaintiff that he remained obligated to serve each defendant and file proof with the Court.  *Id*.

On September 13, 2022, defendants Delta Surveyors and Mr. Snyder (collectively the "Surveyor defendants") and defendants Attorney Fitzgerald, Nelson F. Migdal, Esq. ("Attorney Migdal"), and the Law Firm (collectively

the "Law Firm defendants") renewed their motions to dismiss Finn's amended complaint.[2]  Dkt. Nos. 51, 52.

Defendant Attorney Shapiro answered the pleading.  Dkt. No. 45.  So did defendants Jeneè Rasmussen-Green , LLC ("Rasmussen-Green"), Rasmussen Land Survey PLLC ("Rasmussen"), and Ronald Green ("Green") (collectively the "Rasmussen defendants").  Dkt. No. 60.  Although the State participated in the prior round of briefing, it has not answered or moved against plaintiff's amended complaint.  Dkt. No. 44 (affidavit of service of amended complaint).  Nor has named defendant Ronald Schiess.  Dkt. No. 40 (same).

The motions filed by the Surveyor defendants and the Law Firm defendants have been briefed and will be considered on the basis of the submissions without oral argument.

## II. <u>BACKGROUND</u>

The following facts are taken from Finn's operative complaint, Dkt. No. 33, and are assumed true in light of plaintiff's *pro se* status and the procedural posture of the case.  In 1940, one of plaintiff's predecessors-in-interest staved off an attempt by an adjoining landowner to "illegally claim" certain land.  Am. Compl. at 5 ¶ 3.[3]

---

[2]  Plaintiff took an interlocutory appeal from Judge Lovric's denial of his motion to appoint counsel, Dkt. No. 47, but he later withdrew the appeal, Dkt. No. 68.

[3]  Pagination corresponds to CM/ECF.

In 1974, one of Finn's relatives rebuffed a renewed attempt by a surveyor working on behalf of the Hurlburt family to move certain property boundaries in a second effort to wrongfully obtain the same land that was disputed back in 1940.  Am. Compl. at 9 ¶ 18.

Finn alleges that the Hurlburt family's surveyor—a man named Edward L. Darling—eventually succeeded in improperly or unlawfully redrawing the boundary lines in 1981, shortly after one of plaintiff's relatives died.  Am. Compl. at 9 ¶ 19.

Beginning in 1982 and continuing until 1984, Attorney Fitzgerald "performed a tenant deed separation" between Finn and his "now deceased former brother-in-law."  Am. Compl. at 9 ¶ 22.  As plaintiff explains, Attorney Fitzgerald sent to Attorney Migdal a commissioner's deed to be filed with the Broome County Clerk.  *Id*. ¶ 23.

According to Finn, on April 24, 1984, Attorney Migdal, Attorney Shapiro, and non-party Vincent Vitrano, Esq., "submitted the commissioner's deed" to New York Supreme Court, an act which in plaintiff's view "initiated" the "fraud conspiracy" about which he complains.  Am. Compl. at 9 ¶ 24.

Finn alleges this so-called "commissioner's deed" varies from the previous, correct deed for the property.  Am. Compl. at 10–11 ¶ 32.  As he explains:

> it is almost identical to the previous deed, except for
> right in the middle of the description it was parted,
> sliced open, or separate and a false fictitious survey

> was placed right into the middle of the deed.  I say
> fictitious and false and can state adamantly without a
> doubt because it is not in the warranty deed, as stated
> in the Commissioners deed, prepared by the defendant
> [Law Firm] just 3 months prior to the submission of
> the Commissioner's deed.

Am. Compl. at 10–11 ¶ 32.  According to plaintiff, various aspects of the

survey in this deed show that it is "false."  *Id*. at 11 ¶ 35.

Finn alleges that this false survey description "is a proposed perjury that

was committed by New York State Official's [*sic*], having been appointed by

the New York State Supreme Court."  Am. Compl. at 15 ¶ 43.  Plaintiff

further alleges that he "feels it is up to the Federal Court and the State of

New York to ascertain why the commissioners lied or who put them up to it

and who or how many are involved."  *Id*. at ¶ 44.

In 1997, Finn hired Southern Tier Surveyors to perform a land survey

"after loggers logged timber" from his property.  Am. Compl. at 16 ¶ 54.  After

the survey was completed, plaintiff "discussed" with defendant Schiess, the

Southern Tier Surveyor, "what [he] felt were discrepancies."  *Id*. at ¶ 55.

As Finn explains, defendant Schiess's survey "was based upon the false

survey description that was transcribed into the commissioner's property

deed."  Am. Compl. at 16 ¶ 55.  Afterward, defendant Schiess "placed and

corrected at least three (3) of the property iron's [*sic*]."  *Id*. at ¶ 56.

Finn alleges that when he checked the property irons that had just been placed by defendant Schiess he discovered "that they had been moved by his business partner Roger Holmes." Am. Compl. at 17 ¶ 57.  Plaintiff alleges that defendant Schiess "was unaware of what happened after he left that day." *Id*. at 16 ¶ 56.  Plaintiff tried to speak with defendant Schiess but was told by non-party Roger Holmes that "he was the sole owner" of the surveying company now. *Id*. at ¶ 58.

In 1999, Finn tried to view maps at the tax office "but was denied access." Am. Compl. at 17 ¶ 61.  Plaintiff alleges he believes that tax map employee Dane Clark copied the incorrect survey map generated by the surveying company. *Id*. at ¶ 62.  According to plaintiff, this was just the beginning of "over 20 years of trying to determine why [he] was being subjected to timber theft and survey iron's [*sic*] being moved or disappearing all together [*sic*]." *Id*. at ¶ 63.

Finn alleges he sought help from the Firm, but was repeatedly told that he needed to get a land survey. Am. Compl. at 17 ¶ 64.  Plaintiff suffered several "medical emergencies" that required him to undergo "two subsequent surgeries." *Id*. at 17–18 ¶¶ 65–66.  As plaintiff explains, this "interfered with [his] being able to meet or continue [his] attempts to understand [his] property issues or focus on them except now and then." *Id*. at 18 ¶ 66.

On May 14, 2013, Finn hired Delta Surveyors "to do a land survey that included all deed/mapping research." Am. Compl. at 18 ¶ 69. Plaintiff alleges defendant Mr. Snyder, the Delta Surveyor, made contradictory statements about the property lines. *Id.* at ¶ 70. When plaintiff "realized" Delta Surveyors were "repeating" the same mistakes that Southern Tier Surveyors had made, he "released" them. *Id.* at ¶ 71.

On May 18, 2016, Finn hired defendant Rasmussen to "do title research and afterwards a property survey." Am. Compl. at 18 ¶ 73. Plaintiff "witness[ed] deliberate falsification" by defendant Green that "disgusted" him. *Id.* at ¶ 74. However, plaintiff alleges this also gave him more "insight into what was causing the problem. *Id.* at 18–19 ¶ 74.

Although defendant Rasmussen-Green commented to Finn that "the deed is wrong," they nevertheless "went on to draft their survey to duplicate" Southern Tier Surveyors "work, again ignoring existing property irons, surrounding deed's [*sic*] and surveys; but most of all the fact that 'the deed is wrong.'" Am. Compl. at 19 ¶ 75. Plaintiff contacted the State Police, but "was told they do not have the resources to investigate the matter." *Id.* ¶ 80.

On November 9, 2020, Finn e-mailed Attorney Fitzgerald "telling her [he] had figured it out, all but who had prepared the deed back in 1984." Am. Compl. at 19 ¶ 83. Attorney Fitzgerald told him she did not know who

performed the work, and the Firm told him they had no records of ever having performed the work. *Id.* at 20 ¶ 85.

However, on June 1, 2021, Finn received some paperwork "from the 1980s" that "revealed that" the Firm had performed the deed work and that Attorney Fitzgerald "had drafted the deed." Am. Compl. at 20 ¶ 86.

Finn submitted two deed corrections to the Broome County Clerk, but they refused to help him. *See* Am. Compl. at 20 ¶¶ 87–88. During this process, plaintiff has approached various disciplinary bodies to file complaints but they have all "refused to do anything." *Id.* at ¶ 89.

According to Finn, the refusal by various parties to correct the errors in his property deed have subjected him "to a lifetime of mental and physical anguish," damaged him monetarily, and ended his "40 year happy marriage." Am. Compl. at 20 ¶¶ 90–91.

## III. LEGAL STANDARDS

### A. Subject Matter Jurisdiction

"A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." *Forjone v. Dep't of Motor Vehicles*, 414 F. Supp. 3d 292, 297–98 (N.D.N.Y. 2019) (cleaned up). "The Second Circuit has drawn a distinction between two types of Rule 12(b)(1) motions: (i) facial motions and (ii) fact-based motions." *Nicholas v. Trump*, 433 F. Supp. 3d 581, 586

(S.D.N.Y. 2020); *see also Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56
(2d Cir. 2016) ("A Rule 12(b)(1) motion challenging subject matter jurisdiction
may be either facial or fact-based.").

"A facial Rule 12(b)(1) motion is one based solely on the allegations of the
complaint or the complaint and exhibits attached to it." *Nicholas*, 433 F.
Supp. 3d at 586 (cleaned up). "A plaintiff opposing such a motion bears no
evidentiary burden." *Id.* "Instead, to resolve a facial Rule 12(b)(1) motion, a
district court must determine whether the complaint and its exhibits allege
facts that establish subject matter jurisdiction." *Id.* "And to make that
determination, a court must accept the complaint's allegations as true and
draw all reasonable inferences in favor of the plaintiff." *Id.*

"Alternatively, a defendant is permitted to make a fact-based Rule 12(b)(1)
motion, proffering evidence beyond the complaint and its exhibits." *Nicholas*,
433 F. Supp. 3d at 586 (quoting *Carter*, 822 F.3d at 57). "In opposition to
such a motion, a plaintiff must come forward with evidence of their own to
controvert that presented by the defendant, or may instead rely on the
allegations in their pleading if the evidence proffered by the defendant is
immaterial because it does not contradict plausible allegations that are
themselves sufficient to show standing." *Id.* (cleaned up). "If a defendant
supports his fact-based Rule 12(b)(1) motion with material and controverted

extrinsic evidence, a district court will need to make findings of fact in aid of its decision as to the subject matter jurisdiction." *Id*.

## B. **Personal Jurisdiction**

Rule 12(b)(2) "permits a defendant to challenge a court's personal jurisdiction over it prior to the filing of an answer or the commencement of discovery." *A.W.L.I. Grp., Inc. v. Amber Freight Shipping Lines*, 828 F. Supp. 2d 557, 562 (E.D.N.Y. 2011). Once a 12(b)(2) challenge is asserted, "the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999).

"A court has 'considerable procedural leeway' on a Rule 12(b)(2) motion, and may decide it on the basis of affidavits alone, permit discovery in aid of the motion, or conduct an evidentiary hearing." *Zornoza v. Terraform Global, Inc.*, 419 F. Supp. 3d 715, 726 (S.D.N.Y. 2019) (quoting *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 85 (2d Cir. 2013) (per curiam)).

Indeed, "[i]t is well settled under Second Circuit law that, even where plaintiff has not made a prima facie showing of personal jurisdiction, a court may still order discovery, in its discretion, when it concludes that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record." *Leon v. Shmukler*, 992 F. Supp. 2d 179, 194 (E.D.N.Y. 2014).

"Where a court opts to determine the jurisdictional issue without an evidentiary hearing or discovery, a plaintiff need make only a prima facie showing of jurisdiction through its own affidavits and supporting materials." *Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217, 229 (E.D.N.Y. 2015) (cleaned up). "When, however, a court permits the parties to engage in jurisdictional discovery, the party seeking to establish jurisdiction bears 'the burden of proving by a preponderance of the evidence that personal jurisdiction exists.'" *Id*.

In either case, "[t]he court construes any pleadings and affidavits in the light most favorable to the plaintiff and resolves all doubts in plaintiff's favor." *Zornoza*, 419 F. Supp. 3d at 726. "However, courts should 'not draw argumentative inferences in the plaintiff's favor' or 'accept as true a legal conclusion couched as a factual allegation.'" *Id*. (citation omitted). In sum, plaintiff's "prima facie showing must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *Id*. (cleaned up).

### C. **Service of Process**

Rule 12(b)(5) authorizes a defendant to move for pre-answer dismissal of a pleading for insufficient service of process. FED. R. CIV. P. 12(b)(5). "[W]hen a defendant moves to dismiss under Rule 12(b)(5), the plaintiff bears the burden of proving adequate service." *Dickerson v. Napolitano*, 604 F.3d 732,

752 (2d Cir. 2010) (quoting *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005)).  "In deciding a Rule 12(b)(5) motion, a court looks to materials outside of the pleadings to determine whether service of process has been sufficient."  *Jordan v. Asset Forfeiture Support Assocs.*, 928 F. Supp. 2d 588, 594 (E.D.N.Y. 2013) (cleaned up).  If service is found to be insufficient, the court may grant plaintiff leave to cure the insufficiency or dismiss the action.  *See, e.g.*, *DiFillippo v. Special Metals Corp.*, 299 F.R.D. 348, 353 (N.D.N.Y. 2014) (D'Agostino, J.).

### D.  <u>Failure to State a Claim</u>

To survive a Rule 12(b)(6) motion to dismiss, the complaint's factual allegations must be enough to elevate the plaintiff's right to relief above the level of speculation.  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  So while legal conclusions can provide a framework for the complaint, they must be supported with meaningful allegations of fact.  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).  In short, a complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.

To assess this plausibility requirement, the court must accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in the non-movant's favor.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  In doing so, the court generally confines itself to the facts alleged in the pleading, any documents attached to the complaint or incorporated into it

by reference, and matters of which judicial notice may be taken.  *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016).

## IV.  <u>DISCUSSION</u>

As an initial matter, Finn is proceeding *pro se*.  Accordingly, his filings must be "liberally construed" and "held to less stringent standards than a formal pleading drafted by lawyers."  *Ahlers v. Rabinowitz*, 684 F.3d 53, 60 (2d Cir. 2012) (cleaned up); *see also Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007) (observing that courts must liberally construe pleadings and briefs submitted by *pro se* litigants in a way that raises the strongest arguments they suggest).

However, even accounting for Finn's status as a *pro se* litigant, this action must be dismissed.  "A federal court exercises limited jurisdiction pursuant to Article III of the Constitution.  It may exert subject matter jurisdiction over claims in which: (1) there is a 'federal question' in that a colorable claim arises under the 'Constitution, laws or treaties of the United States,' 28 U.S.C. § 1331; and/or if (2) there is complete 'diversity of citizenship' between each plaintiff and all defendants and a minimum of $75,000 in controversy, 28 U.S.C. § 1332."  *White v. Renzi*, 2022 WL 3646825, at *10 (N.D.N.Y. Aug. 24, 2022) (citations omitted).

## A.  <u>Federal-Question Jurisdiction</u>

Finn's amended complaint identifies two bases for federal-question jurisdiction: the Due Process Clause and 42 U.S.C. § 1985(3).  Am. Compl. at 1 ¶ 1.  Under the "well-pleaded complaint" rule, "federal jurisdiction exists only when a federal question is presented on the face of the plaintiff's properly pleaded complaint."  *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 12 (2003).  Upon review, plaintiff has not alleged a colorable claim under either provision of federal law.

### 1.  <u>Due Process</u>

"A due process claim cannot lie against a private actor unless the allegedly unconstitutional conduct is 'fairly attributable to the State.'"  *Doe v. Livanta LLC*, 489 F. Supp. 3d 11, 17 (E.D.N.Y. 2020) (quoting *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999)).  "In other words, the due process clause provides no shield against merely private conduct, however discriminatory or wrongful."  *Id.* (cleaned up).

"[S]tate action requires both an alleged constitutional deprivation 'caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible,' and that 'the party charged with the deprivation must be a person who may fairly be said to be a state actor.'"  *Am. Mfrs. Mut. Ins. Co.,*

526 U.S. at 50 (quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 937 (1982)).

As the Supreme Court has recognized, "there is no single test to identify state actions and state actors." *Brentwood Acad. v. Tenn. Secondary Sch. Athletic Ass'n*, 531 U.S. 288, 294 (2001). Although a host of factors can bear on this question, three main tests have emerged:

> For purposes of section 1983, the actions of a nominally private entity are attributable to the state when: (1) the entity acts pursuant to the "coercive power" of the state or is "controlled" by the state ("the compulsion test"); (2) when the state provides "significant encouragement" to the entity, the entity is a "willful participant in joint activity with the state," or the entity's functions are "entwined" with state policies ("the joint action test" or "close nexus test"); or (3) when the entity "has been delegated a public function by the state ("the public function test").

*Sybalski v. Indep. Grp. Home Living Program, Inc.*, 546 F.3d 255, 257 (2d Cir. 2008) (cleaned up).

Finn's amended complaint alleges wrongdoing attributable to private individuals—surveying companies and their owners or employees, various lawyers, and a law firm. Importantly, none of the conduct they are alleged to

have undertaken vis-a-vis the disputed property boundaries satisfies any of the "state action" tests in *Sybalski*.[4]

To the extent Finn has attempted to allege that a couple of the named defendants was engaged in "state action" when, on April 24, 1984, they "submitted the commissioner's deed" to a state court, Am. Compl. at 9 ¶ 22, that is insufficient to qualify under any of *Sybalski*'s tests.

Even assuming otherwise, any claim based on that alleged conduct would be clearly time-barred.  In New York, claims under 42 U.S.C. § 1983—as Finn's due process claim would be—are subject to a three-year statute of limitations.  *Patterson v. Cnty. of Oneida*, 375 F.3d 206, 225 (2d Cir. 2004). The three-year clock begins to run on the date the particular cause of action accrues; *i.e.*, when the plaintiff knows or has reason to know of the harm. *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994).

If measured from the date on which the alleged fraud occurred; *i.e.*, April 24, 1984, Finn's claim is clearly untimely.  Broadly construed, however, plaintiff's amended complaint could be understood to allege that this fraud was concealed from his knowledge for a period of time.  Even so, plaintiff

---

[4]  This lack of state action is fatal to a due process claim.  Importantly, though it would also be fatal to any other kind of § 1983 claim that might be construed (in light of Finn's *pro se* status) from the facts alleged in the amended complaint.  *See, e.g.*, *Fabrikant v. French*, 691 F.3d 193, 206 (2d Cir. 2012) ("Because the United States Constitution regulates only the government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes 'state action.'").

alleges that he realized or became aware of the alleged misconduct from 1984 either in 1997, when he hired Southern Tier Surveyors, or at the latest, on or about May 18, 2016, shortly after he witnessed Rasmussen attempt to survey the incorrect or disputed property boundaries.

Although the doctrine of "equitable tolling" can extend the three-year limitations period in cases of "fraud, misrepresentation[ ] or deception," *Abbas v. Dixon*, 480 F.3d 636, 642 (2d Cir. 2007), a plaintiff still "bears the burden of showing that the action was brought within a reasonable period of time after the facts giving rise to the equitable tolling . . . have ceased to be operational." *Id.* (cleaned up).

Finn did not file this civil action until July 8, 2022, nearly six years after even he admits to discovering the source and nature of the fraud. Although he alleges he did not discover that Attorney Fitzgerald performed the 1984 deed work until he received paperwork from the Firm on June 1, 2021, Am. Compl. at 20 ¶ 86, plaintiff still knew, or had reason to know, of the harm by at least 2016, when he became aware of the false survey description in the deed. Accordingly, any § 1983 claim—whether based due process or any provision of federal law—based on this alleged misconduct is clearly time-barred even if the state action requirement were somehow satisfied.

## 2. **Conspiracy**

Finn's second claim fares no better.  Plaintiff identifies 42 U.S.C. § 1985, which "provides a statutory remedy where a plaintiff can prove a conspiracy to violate his/her civil rights."  *Morpurgo v. Inc. Vill. of Sag Harbor*, 697 F. Supp. 2d 309, 339 (E.D.N.Y. 2010).  However, in order to state an actionable claim under § 1985(3), "the plaintiff must also show that the conspiracy was motivated by 'some racial, or perhaps otherwise class-based, invidious discriminatory animus behind the conspirators' actions.'"  *Id.* (quoting *Mian v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 7 F.3d 1085, 1088 (2d Cir. 1993)).

Finn has not done so.  Plaintiff's amended complaint alleges a conspiracy by some of the named defendants to personally deprive him of a portion of his real property.[5]  Plaintiff has not alleged membership in any "class" protected by § 1985(3).  "When a plaintiff fails to establish membership in a protected group, a civil rights conspiracy complaint under Section 1985 must be dismissed."  *Morpurgo*, 697 F. supp. 2d at 341.

---

[5] Section 1985(3) also requires "state action."  *Young v. Suffolk Cnty.*, 705 F. Supp. 2d 183, 208 n.8 (E.D.N.Y. 2010).  It likewise imposes a three-year statute of limitations, which runs separately from each "overt act" alleged to have damaged the plaintiff. *Farbstein v. Hicksville Public Library*, 323 F. Supp. 2d 414, 420 (E.D.N.Y. 2004).  Even broadly construed, the overt acts—which would include conduct such as presenting a false deed to the state court—are all clearly time-barred as they occurred decades ago.

## B. Diversity Jurisdiction

As noted *supra*, even in the absence of colorable federal claims a district court can still exercise subject matter jurisdiction over a lawsuit if the parties are completely diverse and the amount in controversy exceeds $75,000.

In this context, "diverse citizenship" means a party's "domicile," which in turn means "the place where a person has his true fixed home and principal establishment, and to which, whenever he is absent, he has the intention of returning." *Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000).

Finn's amended complaint alleges facts that, broadly construed, establish his domicile as New York. Am. Compl. at 2 ¶ 2a. But plaintiff also alleges facts that, broadly construed, establish that each of the named defendants is *also* domiciled in New York. *Id*. at ¶¶ 2a–2l.[6] In short, plaintiff has failed to allege the complete diversity required by the statute. *See, e.g.*, *Lincoln Property Co. v. Roche*, 546 U.S. 81, 82 (2005).

## C. Frivolous

To the extent that a basis for subject matter jurisdiction might exist, Finn's amended complaint would still be subject to dismissal because it is frivolous. "A district court has the inherent authority to dismiss an action

---

[6] The only exception is Attorney Migdal, who is alleged to reside at an address in Washington, D.C. Am. Compl. at 3 ¶ 2f. But as the Firm defendants correctly note, the only conduct alleged to have been undertaken by Attorney Migdal is his receipt and transmission of the commissioner's deed he received from Attorney Fitzgerald in 1984. *Id*. at 9 ¶¶ 22–24. That kind of ministerial act, standing alone and occurring decades ago, does not establish a basis for jurisdiction.

that lacks an arguable basis either in law or in fact, regardless of whether the plaintiff has paid the filing fee." *MacKinnon v. City of N.Y./Human Res. Admin.*, 580 F. App'x 44, 45 (2d Cir. 2014) (summary order) (cleaned up).

As relevant here, Finn's amended complaint lacks an arguable basis in law. An action lacks an arguable basis in law when it is based on "an indisputably meritless legal theory" or "a dispositive defense clearly exists on the face of the complaint." *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (cleaned up).

The specific events about which Finn complains occurred many decades ago. Although the misconduct may have been concealed from his knowledge for a period of time, plaintiff acknowledges learning about the misconduct in 1997 or, at the latest, in 2016. The alleged misconduct he has identified is attributable to a group of entirely private actors. As explained *supra*, constitutional claims against wholly private actors are not cognizable in federal court. To the extent they might have once been actionable, they are clearly time-barred.

Notably, the only named defendants against which Finn has actually levied possible accusations of misconduct are Attorney Fitzgerald and the Firm, who in 1984 allegedly facilitated the recording of a false or incorrect property deed. In other words, although plaintiff obviously disagrees with the approach taken by the surveying companies he later hired, he seems to

recognize that these entities acted in good-faith (if incorrect) reliance on the so-called "false" deed filed all the way back in 1984.

This is noteworthy, because the Firm defendants point out that Finn has already tried to proceed in a civil action against them based on the alleged misconduct that occurred in 1984.  That action was dismissed with prejudice by a state court.  *See* Ex. B to Davolos Decl., Dkt. No. 52-4.

Absent vacatur of, or a successful appeal from, that prior state court decision, any subsequent lawsuit based on the same facts against those same defendants—such as this one—would be barred by *res judicata*, which precludes parties from relitigating issues that were or could have been raised in a prior action.  *Howard Carr Cos., Inc. v. Cumberland Farms, Inc.*, 456 F. Supp. 3d 462, 468 (N.D.N.Y. 2020) (explaining preclusion principles).

Importantly, in declaring that this action would be "frivolous" the Court does not intend to be insensitive to Finn's strongly held belief that he has been wronged by one or more of the named defendants.  Instead, it is simply the legal term of art used to recognize the fact that plaintiff cannot further pursue his claims in this federal forum.  *Eggsware v. E. Coast Syndicate*, 2022 WL 1129855, at *4 (N.D.N.Y. Feb. 7, 2022) (Report & Recommendation of Hummel, M.J.) ("This Court has an overarching obligation to determine that a claim is not legally frivolous before permitting a pro se plaintiff's complaint to proceed.").

## D. Leave to Amend

The final question is whether Finn should be given leave to amend his pleading, which he has already amended once as of right. "Generally, leave to amend should be freely given, and a *pro se* litigant in particular should be afforded every reasonable opportunity to demonstrate that he has a valid claim." *Matima v. Celli*, 228 F.3d 68, 81 (2d Cir. 2000) (cleaned up).

However, "it is well established that leave to amend a complaint need not be granted where amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003). After considering the matter, Finn will not be given leave to further amend because the problems with his underlying claims are substantive ones—however characterized, they are grounded in a set of facts that took place several decades ago and that involve purely private actors.

As noted *supra*, to the extent Finn has actually alleged actionable wrongdoing against Attorney Fitzgerald and the Firm, those claims would be barred because he already litigated them in state court. In short, because plaintiff cannot sustain any claims based on the facts alleged, leave to amend would be futile. *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000).

## V. CONCLUSION

Finn's amended complaint must be dismissed. If plaintiff has a good-faith belief that one or more of the attorneys or land surveying companies (or their owners or employees) committed malpractice or violated their ethical

- 25 -

obligations, the remedy for that conduct lies in either state court or in a grievance to the appropriate regulatory body.

Therefore, it is

ORDERED that

1. The Delta Surveyor defendants' motion to dismiss is GRANTED;

2. The Law Firm defendants' motion to dismiss is GRANTED; and

3. Finn's amended complaint is DISMISSED in its entirety without leave to amend.

The Clerk of the Court is directed to terminate the pending motions, enter a judgment accordingly, and close the file.

IT IS SO ORDERED.

Dated:  October 21, 2022
        Utica, New York.

David N. Hurd
U.S. District Judge